GRAHAM, Judge,
delivered the opinion of the court:
This case comes on to be heard on the joint motion of the attorneys for plaintiff and defendant to amend the findings of fact heretofore made, and a stipulation of additional facts has been filed by said attorneys with the motion to amend.
The case as originally heard was on a stipulation of facts. The court concluded that the plaintiff was entitled to recover in some amount, but was unable to determine from the facts then stipulated what the amount should be, and entered an order remanding the case for a stipulation or evidence as to the amount of the judgment that should be rendered for the plaintiff under the conclusion reached by the court.
This is a suit to recover amounts paid as taxes on income claimed to have been legally assessed. The plaintiff prior to the year 1917 owned certain oil rights held in fee and by leases, in the operation of which he had been taking out oil. During the said year he sold these rights, some of which had been purchased prior to March 1, 1913, and the
*131 others thereafter. In his income-tax return for the year 1917 plaintiff made a deduction from his income for that year for a loss claimed to have been sustained in the sale of these oil rights. The Commissioner of Internal Revenue assessed him on the basis of this return in the amount of $2,110.15, which he paid on June 15, 1918. Thereafter the commissioner notified him of an additional assessment of $10,856.66, which the plaintiff paid under protest on November 9, 1923; and after demand for refund and compliance with the requirements of the statute he brought this suit to recover the said sum of $10,856.66, with interest from November 9,1923, as well as an additional sum of $858.79, with interest from June 15, 1918, a total sum of $11,718.45.
The claim for recovery of the said sum of $858.79 was based upon an alleged error in the first return of June 15, 1918, due to making too small a deduction for the loss sustained in the sale of the oil rights. The second assessment of $10,856.66 grew out of the following facts: The plaintiff had extracted oil from said properties (from which of them it does not appear) between March 1, 1913, and the date of the sale in February, 1917, on account of which depletion had been sustained in the sum of $32,253.81 and depreciation in the sum of $10,469.16. In his income-tax returns for the years 1913, 1914, 1915, and 1916 the plaintiff had returned the output for each of these years, and deductions, as specially provided by statute, had been allowed him on account of the depletion and depreciation of his properties. The sum named in the second assessment for depletion was based upon the amount of oil which had been taken out and sold by plaintiff after March 1, 1913; the amount for depreciation was the estimated wear and tear on the properties. These sums aggregated $42,718.97, which the Commissioner of Internal Revenue, in making the reassessment, subtracted from the cost price of the properties, and he deducted the remainder thus found from the selling price, which showed an alleged gain of $27,941.64 on the sale of the properties as against the cost price. This alleged gain was added to plaintiff’s net income as stated in his first return and the reassessment based upon the sum found by this addition. *132 If the addition -of this sum to the net income was not legal, then plaintiff has been illegally assessed for taxes to that extent. This takes us back to the deduction of $42,718.97 from the cost price for depletion and depreciation.
As stated above, the claim for depletion was based upon the amount of oil taken out of the properties and sold after March 1, 1913; the sum for depreciation was the estimated wear and tear on the properties. We shall consider first the question of depletion.
Some confusion has arisen in the case owing to an erroneous view of the character of the property rights of the plaintiff. These were oil rights. By them plaintiff secured the right to extract oil from these different pieces of land. The amount of oil which each contained was not known to the plaintiff or anyone. He had a mere right to extract whatever oil he could, be that amount small or great. He might take a certain amount out and then dispose of the property, but when he sold these rights he sold the same thing that he bought — a mere right to extract oil. He took the chance, in the purchase of the rights and in his expenditures for equipment and operation, of securing oil, either much or little. Whether after taking some out he had taken all did not alter the situation. A person who bought from him might by different drilling or drilling in a different place get a much larger quantity of oil than he had gotten— all dependent upon oil being found in place. The plaintiff did not purchase a certain number of barrels of oil stored in the earth; he purchased a mere right to explore and bring to the surface and into his possession whatever oil he could find. This right was what he sold. It might have been actually more valuable or less valuable when he sold it than at the time of purchase. Whether there was oil in place beneath the surface which could be reduced to possession was something that could not be known or determined, and was dependent upon what movement the oil made from time to time under the surface.
The courts have decided that a person acquiring rights of this character does not acquire ownership of oil in place, and only owns it after he has reduced it to possession. He *133 simply has a right to reduce to possession whatever oil he might find within the limits of the property. Ohio Oil Co. v. Indiana, 177 U. S. 190. Oil is transitory, with a tendency to disappear, it being there to-day and gone to-morrow. The fact that some oil has been extracted from the property does not affect the character of the right.
Oil has no fixed situs under a particular portion of the earth’s surface within a given area. It has the power of self-transmission. It belongs to the owner of the land so long, and only so long, as it remains on it and subject to his control. It has been likened to animals ferae naturae, in that it has the power and tendency to escape without the volition of the owner, so that its existence within the limits of a particular tract is uncertain by reason of its fugitive and wandering tendency. It therefore follows that the property of the owner in oil rights is limited to the mere right to explore and attempt to reduce the oil to possession, and is not absolute until the oil is actually within his grasp and brought to the surface. Ohio Oil Co. v. Indiana, supra.
The claim by the Government of the right in fixing the net income of the plaintiff for taxation to deduct from the cost price of the property the amount of oil extracted is based upon a misconception of the character of this oil after it was extracted from the earth and reduced to possession. It went upon the theory that oil extracted was a part of the capital value of the property. It was, however, income and not capital return. Stratton's Independence, Ltd., v Howbert, 231 U. S. 399. The defendant is attempting to tax it as a part of the capital return from the sale of this property. The current profits or income from business from year to year are to be accounted for in another form and do not enter into the capital return of the property, as contemplated by the statute, in arriving at a gain or loss by purchase and sale.
To remove the oil did not deplete the capital. For the foregoing reasons, the value of the oil taken out should not have been deducted from the original cost of the property in arriving at a gain or loss by the sale.
*134 There is still to be considered the deduction made by the Government from the purchase price on account of depreciation. This depreciation was covered in the sale price. To deduct it from the cost or add it to the purchase price is equivalent to saying that, while the sale price was $81,200, in fact it must be fancifully fixed at $91,200, and that, while $81,200 was the actual price received, it must be taken to have been $91,200. This depreciation was a part of the necessary wear and tear incident to the use of the property. It was an expense and incident to the business. To add it to the sale price or deduct it from the cost price is in effect to say that the property must be held to have remained in the same condition after use for a number of years that it was in at the time of purchase.
It follows that the Commissioner of Internal Revenue was also in error in deducting from the cost of the property the above amount for depreciation.
The parties in compliance with the order of the court remanding the case filed a supplemental stipulation com taining.some new facts, and stipulated that the amount of the judgment to be entered for the plaintiff, within the conclusion of the court as amended in this opinion, should be $10,893.45, with interest on $36.79 from June 15, 1918, and on $10,856.66 from November 9, 1923. It therefore becomes necessary to briefly discuss the facts, but before doing so some of the legal aspects of the case should be considered.
The sections of the revenue act of 1918, dealing with the questions propounded, are:
“ Seo. 202 (a). That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—
“(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and
“ (2) In the case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with section 203 ” (40 Stat. 1060).
“ Seo. 213. That for the purpose of this title * * * the term £ gross income ’—
“ (a) Includes gains, profits, and income derived from * * * trades, businesses, commerce, or sales, or dealings *135 in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * ” (40 Stat. 1065.)
In the case of Goodrich v. Edwards, 255 U. S. 527, the court held that the provisions of the act of September 8, 1916 (c. 463, 39 Stat. 756), as to taxable gain were in effect the same as those of the act of February 24, 1919 (c. 18, Title II, 40 Stat. 1057), and in United States v. Flannery, 268 U. S. 98, it was held that the provisions of the latter act “ in reference to the gains derived and the losses sustained from the sale of property acquired before March 1, 1913, were correlative, and that whatever effect was intended to be given to.the market value of property on that date in determining taxable gains, a corresponding effect was intended to be given to such market value in determining deductible losses.”
There are two decisions of the Supreme Court bearing upon the question before us, namely, Goodrich v. Edwards, supra, which was decided on March 28, 1921, and involved the provisions of the said act of 1916, supra, and the case of United States v. Flannery, supra, decided on April 13, 1925, and involving the said revenue act of 1918.
In the Goodrich case there were two transactions involved. The first had to do with certain shares of stock for which plaintiff paid $500. The market value of the stock on March 1,1913, was $695, and he sold it in 1916 for $13,931.22. In the second case he purchased stock for $291,600, the value of which on March 1, 1913, was $148,635.50, and sold it in 1916 for $269,346.25. In the first of these transactions the court held that there was a taxable gain which was to be measured by the difference between the value of the property as of March 1, 1913, and the sale price. In the second, where the selling price was greater than the value of the property on March 1, 1913, but less than the cost thereof, there was no taxable gain or allowable loss. The decision of the lower court had been in favor of the Government in both of these transactions, holding that in the first the *136 taxable gain was the difference between the value as of March 1, 1913 and the selling price, as the selling price showed a gain over the cost,- and this was affirmed by the Supreme Court. In the second transaction the lower court held that the difference between the value as of March 1, 1913, and the selling price was a taxable gain. The Supreme Court, however, said this was error, as the difference between the cost price and the selling price showed no actual gain, and that as to this transaction there was neither gain nor loss. After the Goodrich case had been tried in the lower court and decided in favor of the Government, the Solicitor General, when the case came up for hearing in the Supreme Court, confessed error as to the judgment of the lower court in the second transaction, and the case was reversed as to this.
It appears in the opinion in the Flannery case, supra, that following the decision of the Supreme Court in the Goodrich case the Bureau of Internal Revenue revised its regulations and promulgated the following:
“ Article 1561. Basis for determining gain or loss from sale. — For the purpose of ascertaining the gain or loss from the sale or exchange of property the basis is the cost of such property, or if acquired on or after March 1, 1913, its cost or its approved inventory value. But in the case of property acquired before March 1, 1913, when its fair market value as of that date is in excess of its cost, the gain which is taxable is the excess of the amount realized therefor over such fair market value. Also in the case of property acquired before March 1, 1913, when its fair market value as of that date is lower than its cost, the deductible loss is the excess of such fair market value over the amount realized therefor. No gain or loss is recognized in the'case of property sold or exchanged (a) at more than cost but at less than its fair market value as of March 1, 1913, or (b) at less than cost but at more than its fair market value as of March 1, 1913. * *
This regulation contains provisions covering the following circumstances:
“(a) Taxable gain resulted if the selling price was higher than the value on March 1, 1913, and if that value was higher than the cost thereof, to the extent that the selling price exceeded the value on March 1, 1913;
*137 “(6) No taxable gain or allowable loss resulted if tbe selling price was greater than the value of the property on March 1, 1913, but less then the cost thereof;
“(c) An allowable loss resulted if the selling price was less than the value on March 1, 1913, and if that value was less than the cost to the extent of the difference between the value on March 1, 1913, and the selling price;
"(d) No taxable gain or deductible loss resulted if the selling price was less than the value thereof on March 1, 1913, but greater than the cost.”
This regulation of the Bureau of Internal Revenue is approved in the opinion of the Supreme Court in the Flannery case.
In the Flannery case the purchase price was less than $95,115 ;.the value as of March 1,1913, was $116,325, and the sale price was $95,115. The court held that there was neither taxable gain nor deductible loss, thus bringing the case under the above provision (d) of the regulation of the Bureau of Internal Revenue.
We now come to the case under consideration. The court has found that as to two of the properties involved, namely, the Goodman and Matney properties, which were purchased prior to March 1, 1913, the cost thereof was $20,000; the value as of March 1, 1913, was $47,500, and the selling price, $46,650. Thus the case presents the same question as to gain and loss as in the Flarmery case, and, like it, comes within the provision of said regulation of the Bureau of Internal Revenue indicated as (d) in the foregoing analysis of that regulation. As to these properties, therefore, there was neither a gain nor a loss. As to the properties purchased subsequent to March 1, 1913, the facts found show that there was a loss of $7,927.33, and that, considering this loss, the correct taxable net income of the plaintiff for the year 1917 was $30,288.33 and the correct amount of tax due thereon, $2,073.36. The tax paid by plaintiff on June 15,1918, for the year 1917 on the first assessment was $2,110.15 and on the second assessment, $10,856.66, paid on November 17, 1923, a total of $12,966.81, leaving a balance due the plaintiff 0f $10,893.45, with interest on $36.79 from, June 15, 1918, to November 9, 1925, amounting to $16.33 (Finding IY), and *138 on $10,856.66 from November 9, 1923, to November 9, 1925, amounting to $1,302.80, making a total for which, judgment should be rendered of $12,212.58. The sum of $36.79, for which interest is allowed above, is the difference between the first assessment ($2,110.15) paid by plaintiff and the amount which has been found to be correctly due ($2,073.36). Judgment should therefore be entered in favor of plaintiff in the sum of $12,212.58, and it is so ordered.
Hay, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.