Graham, Judge,
delivered the opinion of the court:
This case arose out of a tax assessed against and paid by plaintiffs as executors of the estate of McKinney, based on the difference between the appraised value of certain stock as of the date of the death of McKinney and the sale price of the stock.
The applicable sections of the revenue act of 1918 (40 Stat. 1060, 1065) are as follows:
“ Sec. 202. (a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—
“(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and
“(2) In the case of property acquired on or after that date, the cost thereof; or the inventory value, if the inventory is made in accordance with section 203.”
“ Sec. 213. That for the purposes of this * * * the term ‘ gross income ’—
“(a) Includes gains, profits, and income derived from * * * trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.”
The provisions of this act as well as the act of 1916, which was held to be identical in effect, have been fully discussed in the cases of Goodrich v. Edwards, 255 U. S. 527; Walsh v. Brewster, id., 536, and United States v. Flannery, 268 U. S. 98, and in the recent decision of this court in Ludey v. United States, 61 C. Cls. 126, decided November 9, 1925. See also 33 Ops. A. G. 291, cited by the Supreme Court in the Flannery case, supra.
McKinney died on April 28,1918, and the executors qualified on the 8th of May, 1918. The stock consisted of 4,800 shares of the General Asphalt Co., appraised at $61,200 by the Surrogate Court of New York County, State of New York, as of April 28, 1918, the date of the testator’s death. It was sold for $160,311.75, or $93,111.75 more than its appraised value. Upon the basis of this apparent gain of $93,111.75 there was assessed against plaintiffs a tax of *187 $34,460.25, which they paid under protest and for the refund of which they subsequently filed their claim.
This stock was purchased prior to March 1, 1913, at a cost of $177,131.90, its market value on March 1, 1913, being $187',200. It was sold by the executors, as stated, for $160,-311.75. It will be seen from this that as between the purchase price and the value on March 1,1913, there was a gain, but that as between the value on March 1, 1913, and the selling price there was a loss, and that as between the purchase price and the selling price there was also a loss.
It is plain that, under the decisions cited, had McKinney made the sale himself there would have been no taxable gain. Whether he would have been entitled to a deductible loss it is not necessary to determine, as that question is not before the court.
The statute, according to the construction given it by the foregoing decisions, had for its purpose the taxation of “ gains derived from the sale ” of property, based on the difference between the original investment and the sale price, and the allowance of loss sustained measured in the same way. It contemplated a purchase and a sale. It made no provision, and it is clear that it did not intend, that any value other than the market value on March 1, 1913, was to be considered. Had it intended otherwise it would have so stated.
Defendant’s contention in effect asks the court to add a provision to the statute to the effect that if a sale is made after the death of the purchaser and after March 1, 1913, the measure of gain or loss for the purposes of taxation should be not the measure fixed by the statute but the difference between the appraised value of the property as of the date of the testator’s death and the selling price. And if this contention were sustained, it would amount to assessing plaintiffs with a taxable gain, although there was an actual loss both as between the purchase price and sale price, and the appraised value on March 1, 1913, and the sale price. The statement of the proposition is its answer.
Defendant is also contending that the sale by the executors creates a different situation from that which would have existed had the sale been made by McKinney himself, and *188 it in effect asks the court to consider as the cost of the property, not the purchase price, but the appraised value of it at the time of the testator’s death, as though it had cost them that amount. Of course, there was no cost to the executors. They were the personal representatives of the decedent. The stock was the same stock as it had been in the hands of the decedent, and, as stated, had he lived and sold the stock himself there would have been no question of taxable gain. The fact that they were executors did not alter the situation.
In the case of the Mercantile Loan & Trust Co. v. Smietanka, 255 U. S. 509, which was a sale of assets by trustees of a fund under a will, the Government’s brief contended for the following position:
“ The gains received by a trustee under a will by the profitable sale of capital assets purchased by the testator in his lifetime are measured in precisely the same way they would have been measured if the latter had lived and made the sale himself.”
And this view of the matter was accepted by the court as is evident from its decision.
Before final argument in this case the defendant filed a motion to dismiss the petition upon the ground that the suit which had been previously brought in the Northern District of Illinois against the former collector of internal revenue, though it had been dismissed, was still a pending suit within the meaning of section 154 of the Judicial Code, and further that said judgment of dismissal constituted res adjudícala as to the claim forming the subject matter of the petition in this case. The motion was heard by this court on briefs and oral argument, and denied.
While the question is not raised or discussed in defendant’s bi'ief, we are of opinion that the requirements of the doctrine of res adjudicata have not been met by dismissal of the suit brought against the collector. See Sage et al. v. United States, 250 U. S. 33.
Judgment should be entered for the plaintiffs, and it is so ordei’ed.
Hay, Judge; Dowkey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.