*Decision will be entered under Rule 50.*

HAZEL B. BECKMAN TRUST UNDER DEED OF TRUST DATED MAY 3, 1932, C. FRANK REAVIS, CLIFFORD W. MICHEL, HENRY C. BRUNIE AND WILLIAM B. FRANKE, SURVIVING AND SUCCESSOR TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55163. Filed September 24, 1956.

*Martin D. Jacobs, Esq.*, *Allan F. Ayers, Jr., Esq.*, and *Peter J. Repetti, Esq.*, for the petitioner.
*Ellyne E. Strickland, Esq.*, for the respondent.

OPINION.

HARRON, *Judge:* The petitioner, the Beckman trust, sold in the taxable year, which was after the death of the petitioner's creator, Hazel B. Beckman, some of the Wenonah stock which she had transferred to the Beckman trust at the time she created the trust on May 3, 1932. The question is, "What is the basis of the stock for the purpose of computing the amount of petitioner's capital gain?"

The petitioner contends that the second sentence of section 113 (a) (5), 1939 Code, as it applies to property transferred by a grantor dying before January 1, 1952 (i. e., prior to amendment thereof by section 203 of the Technical Changes Act of 1953), is controlling. It provides as follows:

In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, *with the right reserved to the grantor at all times prior to his death to revoke the trust,* the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death *shall,* after such death, *be the same as if the trust instrument had been a will executed on the day of the grantor's death.* * * * [Emphasis supplied.]

If the second sentence of section 113 (a) (5) is controlling here, the basis of the stock is its value at the date of the grantor's death, or $144.18 per share.

The respondent has determined that the basis of the stock is the same as it would be in the hands of the grantor, or about $56.71 per share. He made this determination under section 113 (a) (2), and on brief he contends that the basis of the trust property was properly determined under section 113 (a) (2).[1] The pertinent provisions of section 113

[1] The 1942 Revenue Act, section 143, amended section 113 (a) (3) so as to except from the operation of subsection 3, dealing with transfers in trust, property acquired by a transfer in trust by a gift. In the report of the Committee on Ways and Means on the revenue bill of 1942, H. Rept. No. 2333, 77th Cong., 1st Sess., par. 130, it was stated that, "There is no substantial difference between a gift in trust and other gifts for purposes of basis." The effect of the amendment was to modify the rule expressed in *Commissioner* v. *Warren Webster Trust No. 1,* 122 F. 2d 915, so as to bring within the operation of section 113 (a) (2) property acquired by a gift in trust. Accordingly, in this case the Commissioner made his determination under section 113 (a) (2).

(a) (2) and (5), as amended by section 143 of the Revenue Act of 1942, and as they apply to property transferred by a grantor dying before January 1, 1952, are set forth in the margin.[2]

Since the basis provisions of section 113 (a) (2) apply to property acquired by a transfer in trust by a gift (cf. sec. 113 (a) (3), as amended by sec. 143 (b), 1942 Act) ; and since the second sentence of section 113 (a) (5) excepts from the operation of section 113 (a) (2) property transferred to a trust which reserves to the grantor the trust income for life and the right to revoke the trust, and treats such transfer of property to a trust as if the trust instrument had been a will executed on the day of the grantor's death, the issue before us turns on whether the Beckman trust comes within section 113 (a) (5). That is to say, the question is whether the transfer of the stock to the Beckman trust is to be treated as a testamentary transfer or an inter vivos gift to a trust.

The question is one of first impression under section 113 (a) (5).

The Beckman trust instrument was a trust, the income of which was payable to the grantor for life. Therefore, it meets one of the specifications of the second sentence of section 113 (a) (5). The trust instrument also reserved to the grantor at all times prior to her death the right to revoke the trust with the consent of two nonadverse trustees, or one nonadverse trustee, as the situation might exist. It is the nature of the reserved power to revoke, set forth in the amended trust instrument, which gives rise to the issue because respondent takes the view that the specification in section 113 (a) (5) is not met if the power to revoke which is reserved to the grantor in the trust instrument is a power to revoke in conjunction with another person, even though that person does not have any adverse interest in the trust. The petitioner argues, in effect, that the intendment and purpose of section 113 (a) (5), which relates to the basis of property

---

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property, except that—

\* \* \* \* \* \* \*

(2) GIFTS AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period prior to the date of the gift as provided in subsection (b)) is greater than the fair market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. \* \* \*

\* \* \* \* \* \* \*

(5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death. \* \* \*

transmitted at death, becomes evident by comparison with section 113 (a) (2), which relates to the basis of property acquired by gift, and by giving consideration to the principles underlying the gift tax provision of the Code and the established rules of law pertaining to gifts for Federal tax purposes. That is to say, the petitioner contends that since, for tax purposes, "a gift is not consummate until put beyond recall," *Burnet* v. *Guggenheim*, 288 U. S. 280, 286; and since a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, is not a completed gift (Regs. 108, sec. 86.13); it is proper to conclude that there is no essential difference, for purposes of the second sentence of section 113 (a) (5), between a trust which reserves to the grantor at all times prior to death the right to revoke the trust in conjunction with a trustee who does not have an adverse interest, and a trust which reserves to the grantor alone the right to revoke the trust.

It is concluded that the Beckman trust comes within the provisions of the second sentence of section 113 (a) (5), and, therefore, that the basis of the stock transferred to the trust in petitioner's hands, after the death of the grantor, is the fair market value at the date of the grantor's death. In arriving at this conclusion, we have given consideration to the legislative history, such as there is, of the original enactment of section 113 (a) (5) as section 113 (a) (5) of the Revenue Act of 1928; to the committee reports accompanying the revenue bill of 1928; and to established principles of tax law. It is not necessary to review all of these factors at length; what seems to be sufficient is set forth.

Prior to the Revenue Act of 1928, none of the revenue acts specifically provided for the basis to be employed in computing gain or loss on a sale of property by an executor or administrator. Nevertheless, for many years, the Commissioner's regulations provided that the basis should be the fair market value of the property at the decedent's death, until the decision in *McKinney* v. *United States*, 62 Ct. Cl. 180 (1926), certiorari denied 273 U. S. 716, in which the Court of Claims held that the basis in the hands of the executor or administrator is the same as the basis in the hands of the decedent. This Court (then the Board of Tax Appeals) took the contrary view, holding in *Dorothy Payne Whitney Straight, Executrix*, 7 B. T. A. 177 (1927), that the basis for determining gain or loss in the hands of an executrix was the value of the property at the date of the decedent's death. Following denial of certiorari in the *McKinney* case, the Commissioner promulgated Treasury Decisions 4010, 4011, and 4012 changing his previous rule so as to provide that basis in the hands of an executor

or administrator should be the same as it would have been if the decedent had sold the property. Report of the Joint Committee of Congress on Internal Revenue Taxation to the Committee on Ways and Means and to the Committee on Finance, dated Nov. 15, 1927, p. 74. As a result, and upon requests and recommendations to the Committee on Ways and Means, section 113 (a) (5) was enacted. Some of its provisions served clarification purposes. It took the place of section 204 (a) (5) of the 1926 Revenue Act. See Seidman, Legislative History of Federal Income Tax Laws, 1933–1861, pp. 532, 533, 534, which contains excerpts from committee reports and references to the hearings of the Committee on Ways and Means.

At the time that the provisions of section 113 (a) (5) of the 1928 Act were being considered, what is now the second sentence of section 113 (a) (5) was written into the draft, when the revenue bill of 1928 was in the committee of conference, as a special rule, and the purpose thereof is stated in the conference report, H. Rept. No. 1882, 70th Cong., 1st Sess., p. 15, 1939–1 C. B. (Part 2) 447–8, as follows:

A special rule is provided in section 113 (a) (5) by which to determine the basis of property transferred in trust with the right reserved to the grantor at all times prior to his death to revoke the trust where the sale or other disposition of property occurs after the death of the grantor. This rule includes sales or other dispositions by the trustee and also by a beneficiary of the trust. *In view of the complete right of revocation in such cases on the part of the grantor at all times between the date of creation of the trust and his death, it is proper to view the property for all practical purposes as belonging to the grantor* rather than the beneficiaries *and to treat the property as vesting in the beneficiaries according to the terms of the trust instrument, not at the date of creation of the trust, but rather on the date of the grantor's death, for the purpose of determining gain or loss on sale or other disposition of the property after the grantor's death by the trustee or by a beneficiary.* Accordingly, it is provided that the basis of such property in the hands of the persons entitled thereto by the terms of the trust instrument after the grantor's death shall be the same as if the trust instrument had been a will executed on the date of his death. *Thus property acquired by virtue of revocable trusts of the kind described is treated, for all practical purposes, the same as though it had been transmitted by the grantor by will at his death.* [Emphasis supplied.]

As we understand the limited record of the legislative history of what is now the second sentence of section 113 (a) (5), it was added to the draft of that section in the interest of uniformity with the treatment given to an executor or administrator in the preceding part of the section. The rule by which to determine the basis of property transferred in trust with the right reserved to the grantor to revoke the trust prior to his death, where the sale of such property occurred after the death of the grantor, was so stated (as we understand) so that a trustee or beneficiary who sold such property after the death of the grantor would be in the same position, with respect to basis, as an

executor or administrator who sold property; i. e., the basis of property sold by an executor, or an administrator, or a trustee of the kind of trust described, or a beneficiary of such trust would be, in the hands of each, the fair market value of the property at the time of the death of the decedent.

We think it is made clear in the above-quoted part of the conference report that the legislators were dealing with (in what is now the second sentence of section 113 (a) (5)) those trusts where the property, transferred in trust with the income to be paid to the grantor for life with the right reserved at all times from the creation of the trust until death to the grantor to revoke the trust, should be viewed, "for all practical purposes," "as belonging to the grantor rather than the beneficiaries." With respect to property transferred to such trust, it was intended that for the purpose of determining gain or loss, the property should be treated as vesting in the beneficiaries according to the terms of the trust instrument, "not at the date of the creation of the trust," in which event the basis of the property would be the same as it would be in the hands of the grantor (sec. 113 (a) (2)), "but rather on the date of the grantor's death," so that the basis of the property would be the same as if the property had been acquired under a will executed on the date of death, namely, fair market value at the time of death.

The intent throughout section 113 (a) (5) was, as we understand and as heretofore stated, to introduce a uniform rule on the matter of the basis of property upon sale thereof after the death of a decedent; and the inclusion in section 113 (a) (5) of a special rule on basis of property transferred to a trust under the terms of which the property transferred in trust did not vest in the beneficiaries until the death of the grantor was to give effect to the principle that a gift is not consummate until it is beyond recall. Under this view, the respondent's position in this case calls for a restricted and narrow construction of the word "revoke" in section 113 (a) (5) which we believe was not intended by the legislators. Moreover, under this view, we believe it is proper, in construing and applying section 113 (a) (5), to consider whether the terms of the trust instrument reserved to the grantor such control over the ownership of the property and the income of the property transferred in trust as to continue such ownership in the grantor at all times from the creation of the trust until the grantor's death. In order to do this, we should not consider the trust indenture provision relating to revocation as an element apart from the provisions reserving the trust income to the grantor for life; and we should consider the trust indenture provision relating to revocation in the light of the rules pertaining to completed inter vivos gifts. From this

standpoint, it is pertinent to recall the rules expressed in the following authorities:

The mere interest of a trustee is not an adverse interest. Where taxing acts are involved, we look not to the refinements of title but to the actual command over the property taxed. *Corliss* v. *Bowers*, 281 U. S. 376, 378; *Tyler* v. *United States*, 281 U. S. 497. See also *Reinecke* v. *Smith*, 289 U. S. 172, which states that

A settlor who at every moment retains the power to repossess the corpus and enjoy the income has such a measure of control as justifies the imposition of the tax on him * * *. We think Congress may with reason declare that where one has placed his property in trust subject to a right of revocation in himself and another, not a beneficiary, he shall be deemed to be in control of the property.

Under the gift tax regulations, Regulations 108, section 86.3, a gift is not complete if the donor reserves the power to revest the beneficial title to property in himself; and

A donor shall be considered as himself having the power [to revest beneficial title to property in himself] where it is exercisable by him in conjunction with any person not having a substantial adverse interest in the disposition of the transferred property or the income therefrom. A trustee, as such, is not a person having an adverse interest in the disposition of the trust property or its income.

There is no doubt whatever, and the respondent has been unable to establish the contrary, that under the terms of the trust instrument, Hazel Beckman's transfer of the Wenonah stock to the trust at its creation was an incomplete gift; that she retained, for all practical purposes, the right to revest the beneficial interest in the stock in herself; and that the power to retake the beneficial interest in the property remained in her until her death. *Estate of Sanford* v. *Commisssioner*, 308 U. S. 39; *Burnet* v. *Guggenheim, supra, Camp* v. *Commissioner*, 195 F. 2d 999, 1152; *Reinecke* v. *Smith, supra*. It must be concluded that under the terms of the Beckman trust instrument, for all practical purposes, the stock belonged to the grantor and did not vest in the beneficiaries of the trust until the death of the grantor. Accordingly, the Beckman trust comes within the intendment of the second sentence of section 113 (a) (5). The respondent's determination is reversed.

Both parties have cited *Minnie M. Fay Trust "A"*, 42 B. T. A. 765. There the trust did not reserve to the grantor any power of revocation. That case is not controlling here.

Reviewed by the Court.

*Decision will be entered for the petitioner.*