## MYERS v. UNITED STATES.
### No. K–308.

Court of Claims.
June 1, 1931.

This case having been heard by the Court of Claims, the court, upon the stipulation entered into between the parties, makes the following special findings of fact:

1. The plaintiff at all times hereinafter mentioned was one of the executors, and is now the sole surviving executor, of the estate of Nathaniel Myers, deceased.

2. On or about March 12, 1923, the plaintiff made to the Commissioner of Internal Revenue his income tax return as executor of the estate of Nathaniel Myers, deceased, for the taxable year ending December 31, 1922, on official form 1040.

3. On the basis of the said return for 1922, there were assessed against the plaintiff income taxes of $19,345.17, which assessment was subsequently reduced by $9,968.96, making a net assessment of $9,376.21.

4. The said assessment of $19,345.17 was paid by the plaintiff as follows:

"First installment, May 21, 1923, $4,836.-30, paid to the collector of internal revenue for the second district of New York;

"Second installment, June 8, 1923, $4,-836.29, paid to the collector of internal revenue for the third district of New York;

"Third installment, September 12, 1923, $4,836.29, paid to the collector of internal revenue for the third district of New York;

"Fourth installment, December 14, 1923, $4,836.29, paid to the collector of internal revenue for the third district of New York; and the collector or collectors of internal revenue to whom said payments were made by the plaintiff turned over and deposited into the Treasury of the United States of America as in the course of his or their official business said payments."

5. On May 6, 1926, the plaintiff filed a claim for refund of the $9,968.96 referred to in finding 3 above, and said claim for refund was subsequently allowed and refund payments thereof were made as follows: First refund on or about April 22, 1928, $8,203.-88; second refund on or about December 1, 1928, $1,765.08.

6. On September 9, 1927, plaintiff filed with the collector of internal revenue for the Third district of New York an additional claim for refund of income taxes paid for 1922 of $10,327.23.

7. On October 29, 1928, plaintiff's claim for refund referred to in finding 6 above was rejected in full by the Commissioner of Internal Revenue.

8. In determining the net assessment of $9,376.21, referred to in finding 3 above, the Commissioner of Internal Revenue computed the taxable profit or deductible loss from the sale in 1922 by the plaintiff (as executor) of certain securities held by the decedent, Nathaniel Myers, at the time of his death and included in his estate, on the basis of the value of said securities at the date of decedent's death.

9. Had the taxable profit or deductible loss from the sale of said securities been computed upon the cost basis of the said securities to the decedent, namely, their actual cost to the decedent or their March 1, 1913, value, whichever was higher, the income of the

plaintiff would have been $40,751.66 less than the amount which the Commissioner of Internal Revenue determined as the income of the plaintiff for 1922, and the tax assessable against the plaintiff would have been reduced by $9,149.25.

10. The cost basis of the securities referred to in findings 8 and 9 above, to the decedent, and their value at the date of his death, were as follows:

McLaughlin, Knollenberg & Leisure, of New York City (Bernhard Knollenberg, of New York City, on the brief), for plaintiff.

Charles B. Rugg, Asst. Atty. Gen. (Charles R. Pollard and William T. Sabine, Jr., both of Washington, D. C., on the brief), for defendant.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

| Description | Value at date of death | Cost basis to decedent |
|---|---|---|
| Stocks | | |
| 25 shares Crocker Wheeler Co. N. Y., pfd. | $2,125.00 | $2,485.49 |
| 50 shares Industrial Trust Co., Prov., R. I. | 11,100.00 | 12,425.00 |
| 100 shares Kerr Lake Mines, Ltd. | 375.00 | 331.76 |
| 10 shares Missouri Lincoln Trust Co. | 400.00 | 500.00 |
| 232 shares Natl. Bk. of Com. in St. Louis | 29,000.00 | 34,684.00 |
| 500 shares Joseph Dixon Crucible Co. | 62,000.00 | 62,500.00 |
| 500 shares Joseph Dixon Crucible Co. (150% stock div. in 1920) | 62,000.00 | 20,000.00 |
| 78 shares U. S. Rubber Co. N. J., pfd. | 6,084.00 | 7,800.00 |
| 100 U. S. Steel Corp., pfd. | 10,900.00 | 10,912.50 |
| Bonds | | |
| 15 M Central Leather 1st Lien 20-yr. gold 5's | 13,125.00 | 14,362.50 |
| 10 M Cent. of Ga. Rwy. Co. cons. mtge. gold 5's | 8,450.00 | 10,000.00 |
| 22 M Chi., Mil. & St. Paul Rwy. Co. genl. mtge. gold 4½ | 16,995.00 | 22,300.30 |
| 34 M City of N. Y. Corp. stock 4½ | 30,430.00 | 36,256.43 |
| 5 M City of N. Y. Corp. stock 4 | 4,000.00 | 4,980.00 |
| 15 M Gal. Harrisburg & San Ant. Rwy. Co. of Texas 1st mtge. 5's | 13,462.50 | 15,712.50 |
| 20 M Houston Texas Cent. R. R. Co. W. & U. Division first 6's | 17,000.00 | 23,200.00 |
| 8 M Missouri Pacific Railway Co. third gold 4's | 5,560.00 | 7,720.00 |
| 26 M N. Y. Gas & El. Lt. & P. Co. gold 4's | 17,615.00 | 21,320.00 |
| 22 M Pacific R. R. of Mo. second mtge. extend. 5's | 17,792.50 | 22,660.00 |
| 30 M Reading Co., The Phila. Coal & Iron Co. genl. mtge. gold 4's | 22,575.00 | 28,124.83 |
| 5 M Southern Rwy. Co. 1st mtge. gold 5/1994 | 4,212.59 | 5,275.00 |
| 25 M Union Pacific R. R. Co. 1st & refdg. mtge. 4's | 19,406.25 | 22,468.75 |
| 15 M Union Pacific R. R. Co. 1st mtge. & land grant 4's | 12,225.00 | 14,793.75 |
| 30 M United Railways of St. Louis | 14,625.00 | 22,143.75 |
| 115 M U. S. Rubber Co. 1st & refdg. 5's | 89,771.78 | 102,910.00 |
| 28 M U. S. Steel Corp. 10-60-yr. gold 5's | 26,495.00 | 28,367.75 |
| 5 M United Timber Corp. | 5,000.00 | 5,000.00 |
| 3 M U. S. 3d Lib. loan 4¼ | 2,750.70 | 3,000.00 |
| 33,300 U. S. 4th Lib. loan 4¼ | 29,307.33 | 33,300.00 |
| | 554,782.65 | 595,534.31 |
| Decedent's cost basis, total | | 595,534.31 |
| Value at date of death, total | | 554,782.65 |
| Excess of decedent's cost basis over value of securities at date of death | | 40,751.66 |

11. If the plaintiff is correct in his claim that the proper basis to be used in computing the taxable profit or deductible loss from the sale of securities listed in finding 10 above is the cost basis of the said securities to the decedent, the plaintiff will be entitled to $9,149.25, with interest, after allowing all just claims and set-offs.

WHALEY, Judge.

The facts as found in this case are not disputed. In the case of Elmhirst, Executrix, v. United States, 38 F.(2d) 915, 69 Ct. Cl. 295, the court in construing section 202 (a) of the Revenue Act of 1918, 40 Stat. 1057, 1060, held the gain or loss arising from the sale of securities by an executor is, for in-

come tax purposes, to be computed on the basis of their cost to decedent and not on the basis of their value at the date of decedent's death. The question in this case is whether the value of decedent's securities at time of death is their cost within the meaning of section 202 (a) and (b), Revenue Act of 1921, 42 Stat. 227, 229. The two sections, as to the point in issue, in substance, are the same and the decision in the Elmhirst Case, supra, is controlling.

Judgment is for the plaintiff. It is so ordered.

BOOTH, Chief Justice, and WILLIAMS, Judge, concur.

GREEN, Judge (concurring).

I concur solely on the ground that this court has twice decided the legal question in controversy in this case (McKinney v. United States, 62 Ct. Cl. 180 and Elmhirst v. United States, 38 F.(2d) 915, 69 Ct. Cl. 295), and in both instances certiorari has been denied by the Supreme Court. 273 U. S. 716, 47 S. Ct. 108, 71 L. Ed. 855; 282 U. S. 855, 51 S. Ct. 29, 75 L. Ed. ——.

LITTLETON, Judge.

It seems to me that a decision in favor of the plaintiff in this case is inconsistent with the intent and purpose of the statutes taxing estates and with the decision in Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305, and with the position taken by this court in Nichols et al. v. United States, 64 Ct. Cl. 241. In the last-mentioned case this court stated that "when * * * an item is properly determined to constitute a part of the gross estate of a decedent for estate-tax purposes it can not by any sort of reasoning be made to constitute a part of the income of the same estate. It is a part of the corpus." And further it is stated that "the income * * * which the statute taxes is, generally speaking, the income which accrues after the estate begins, and it begins with the decedent's death."

In view of the provisions of the statutes, section 219 of the Revenue Act of 1918, 40 Stat. 1071, and the same section of the Revenue Acts of 1921 (42 Stat. 246) 1924 (43 Stat. 275 [26 USCA § 960 note]) and 1926 (44 Stat. 32), making an estate a separate taxable entity, I do not think the estate can be said to stand in the shoes of the decedent for the purpose of the determination of gain or loss upon the sale of property by the estate during the period of administration.

Such holding would necessitate the determination of depreciation and depletion allowable to an estate or trust in a proper case upon the basis of cost to the decedent or the March 1, 1913, value in his hands. If the basis in the hands of the decedent is to be used in determining gain or loss to the estate upon the sale of property by it, I fail to see how it can consistently be held that the collection by the estate of amounts due the decedent at his death constitutes capital and not income. If the estate stands in the shoes of the decedent, it would be collecting income due the decedent and would be taxable upon it. As a separate and distinct taxable entity, however, the decision in Nichols et al. v. United States, supra, was right, and, applying that theory, the basis for determination of gain or loss to the estate upon the sale of property passing to it from the decedent is the market value at the date of the decedent's death. The basis for computing gain or loss resulting from the sale of property of an estate by an executor is the same as the basis in the case of sale of property acquired by gift, devise, or bequest, namely, the value at the date of acquisition, if subsequent to March 1, 1913, and, since an estate is a taxable person, the gain to the estate must be computed on that basis and the tax paid thereon. Irrespective of its characterization in other fields of law, an estate is regarded for federal income tax purposes as a distinct and complete tax entity. Nichols et al. v. United States, supra; Baltzell v. Mitchell (C. C. A.) 3 F.(2d) 428; Bankers' Trust Co. v. Bowers (C. C. A.) 295 F. 89, 31 A. L. R. 922; Catherwood v. United States (C. C. A.) 291 F. 560; McCarthy, Executor, 9 B. T. A. 525. For such purposes this entity is unrelated to and independent of its grantor or creator. For tax purposes it is likewise completely segregated from its beneficiaries, even if the beneficiary and fiduciary are identical. Studebaker, 2 B. T. A. 1020. The estate must necessarily act through a representative, the fiduciary. All taxes of the entity are therefore directed against the fiduciary, not personally but in his capacity as a representative of the estate entity.

After the decision of this court in McKinney et al. v. United States, 62 Ct. Cl. 180, the Treasury Department on April 6, 1927, C. B. VI–1, page 248, changed article 343 of regulations 45, 1920 edition, but on July 7, 1928, C. B. VII–2, page 134, after the decision of this court in Nichols et al. v. United States, supra, and the decision in Bankers' Trust Co. v. Bowers (D. C.) 23 F.(2d) 941,

and Dorothy Payne Whitney Straight, Executrix, 7 B. T. A. 177, revoked the amendment of April 6, 1927, and restored the original article 343 of the regulations providing that the basis for the determination of gain or loss on the sale of property by an estate should be the value of such property at the date of decedents' death. With this exception the regulations and rulings of the Treasury Department from the beginning of the taxation of estates have always prescribed that the value of the property at the date of death of the decedent should be the basis for the determination of gain or loss to the estate. A few of the early decisions are cited below.[1] Since estates were first made taxable entities, the law has been changed only in its minor details. The position taken in the regulations as they stood for many years, and as they now stand, is supported by Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305; Brewster v. Gage, 280 U. S. 327, 335, 50 S. Ct. 115, 74 L. Ed. 457; Bankers' Trust Co. v. Bowers (C. C. A.) 295 F. 89, 31 A. L. R. 922; Bankers' Trust Co. et al. v. Bowers (D. C.) 23 F.(2d) 941; Dorothy Payne Whitney Straight, supra; Klein's Federal Income Taxation, c. XXXIV, pp. 1133–1165; Holmes' Federal Income and Profits Taxes (1920 Ed.) c. 2, pp. 69, 75, and Holmes' Federal Taxes (6th Ed.) c. 4, pp. 54 and 76, § 53, and chapter 17, p. 588; and Foulke's Federal Income Tax, c. 43, § 1446, p. 681.

In Merchants' Loan & Trust Co. v. Smietanka, supra, the trustee received the property from the decedent in 1912 and sold certain portions of it in 1917. The Commissioner taxed the trustee on the difference between the March 1, 1913, value, since that value was higher than the value at the date the trustee received the property, and the sales price. The court said: "Plainly the gain we are considering was derived from the sale of personal property, and, very certainly the comprehensive last clause 'gains or profits and income derived from any source whatever,' must also include it, if the trustee was a 'taxable person' within the meaning of the act when the assessment was made."

The court then proceeded to point out that a trustee was a "taxable person," and that it was the purpose of Congress to tax

gains derived from such a sale as was there involved in the manner in which the tax was assessed, and stated: "Thus, it is the plainly expressed purpose of the act of Congress to treat such a trustee as we have here as a 'taxable person' and for the purposes of the act to deal with the income received for others precisely as if the beneficiaries had received it in person."

The force of this decision is not lessened because the basis used was the March 1, 1913, value, because the decedent died and the property was received by the trustee also prior or thereto. The important feature of the decision is that the trustee was held to be taxable upon the gain derived *precisely as if the gain had been derived by a beneficiary*, which, in the case of a decedent dying before March 1, 1913, would be the value at the date of death or the March 1, 1913, value, whichever was the higher, and, in the case of a decedent dying after March 1, 1913, would be the fair market value at the date of death. Brewster v. Gage, supra. The sections of the statute which impose the tax upon a trustee also impose the same tax liability upon estates. The gist of the decision in McKinney et al. v. United States, supra, is contained in the following statement of the court: "Of course, there was no cost to the executors. They were the personal representatives of the decedent. The stock was the same stock as it had been in the hands of the decedent, and, as stated, had he lived and sold the stock himself there would have been no question of taxable gain. The fact that they were executors did not alter the situation."

This seems to overlook the fact that the estate is made a distinct taxable entity and the tax is not imposed upon the executors in their representative capacity. The court further quoted from the government's brief in Merchants' Loan & Trust Co. v. Smietanka, supra, in which the government contended under the facts in that case that "the gains received by a trustee under a will by the profitable sale of capital assets purchased by the testator in his lifetime are measured in precisely the same way they would have been measured if the latter had lived and made the sale himself," and stated, "and this view of the matter was accepted by the court as is evident from its decision." This statement in the brief seems to have been directed to the proposition that a trustee was a "taxable person." In any event it would seem that the Supreme Court in the Smietanka Case did not hold that the basis to the trustee for the determination of gain or loss was the

---

[1] O. D. 6, 1 C. B. 37; L. O. 1012, 2 C. B. 34; O. D. 129, 1 C. B. 175; O. D. 219, 1 C. B. 180; O. D. 560, 2 C. B. 175; O. D. 667, 3 C. B. 52; O. D. 694, 3 C. B. 53; O. D. 731, 3 C. B. 210; I. T. 1379, C. B. I-2-387; I. T. 1638, C. B. II-1-847; I. T. 1719, C. B. II-2-981.

same as that to the decedent, since it specifically held that it was the purpose of Congress to deal with the income received by the trustee "precisely as if the beneficiaries had received it in person."

There would seem to be no reason to suppose that in case of a taxable estate it was intended that the basis for determining gain or loss should be the cost, or value, in the hands of another and a different taxpayer. It is said that the estate has no "cost" and therefore cost to the deceased owner must be used. But this is not always true. In the absence of actual cost, market value in an appropriate case is cost. Heiner v. Tindle, 276 U. S. 582, 48 S. Ct. 326, 327, 72 L. Ed. 714; Colgate & Co. v. United States, 66 Ct. Cl. 510; Brewster v. Gage, supra. Heiner v. Tindle, supra, involved the deductibility of a loss sustained upon the sale of property originally purchased and used for a long time as a residence and later used as property for the production of income and profit. The court, in holding that the fair market value of property at the date of the change from residence to business property (although the statute was silent in that regard) was the proper basis for determining gain or loss upon a subsequent sale, said: "The same and no greater inconsistency and difficulty arise in the case of property acquired by gift, bequest or devise, when market value at the time of acquisition by the donee and not cost is necessarily the basis of computing the tax." It seems apparent that the purpose of the statute in making the estate a "taxable person" was that its gains and losses during the period of administration should be determined on precisely the same basis as in the case of a trustee or beneficiary. The purpose of taxing income and gains derived during the period of administration was to prevent gains and profits from escaping taxation. In Brewster v. Gage, supra, the court, at page 334, of 280 U. S., 50 S. Ct. 115, 116, said: "Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of the residue."

It seems from the foregoing that the estate which is the taxable entity, and which must pay the tax, does not for the purpose of taxation represent or stand in the shoes of the decedent. Although the executors in some respects represent the decedent, the advent of provisions of the income tax law making the estate a separate, distinct, and complete taxpayer has operated somewhat to change this rule. An estate of a deceased person in process of administration is subject to a dual tax liability—first, liability for a tax owed by a decedent; and, secondly, liability for a tax owed by the estate as an entity. The death of the decedent terminates the taxable year. The executor or administrator is required to file a return for this taxable period and to pay for the decedent on his income during the period prior to his death. Death does not extinguish the decedent's liability to the tax. His estate continues to be liable to pay such tax, and, in so doing, the estate acts for the decedent, functioning as his representative after death. Quite apart from its liability as representative of the decedent the estate is subject to an entirely different tax liability. It is liable as an entity to pay tax on all its net income, and its liability is almost identical with tax liabilities of trusts, and this liability remains as long as the period of administration continues. Where an estate is still in process of administration it is taxed only on income of property which it still retains in its possession and control. Where property is distributed pursuant to provisions of a will while the estate is still in process of administration income on such property earned after distribution is not taxable to the estate but solely to the distributees. In Klein's Federal Income Taxation, par. 34:21 (a), page 1159, it is pointed out that "the effect of the decedent's death is to capitalize all his property and rights of every nature and description. At the instant of death all assets of the decedent, even those which if reduced to possession would be income in his hands, are transmitted into capital and pass to his estate. These assets include all rights and choses in action which have accrued to the decedent. The decedent ceases as a tax entity for all purposes. In his estate there has been created a new tax entity, which is completely disassociated from the decedent and which pays tax on a net income of its own. For tax purposes the estate does not continue merely as a representative of the decedent, and solely as a vehicle for the projection of his personality after his existence has been terminated. It functions ostensibly for itself, but actually for the beneficiaries who will eventually receive the income and corpus of the estate. Bankers' Trust Co. v. Bowers (D. C.) 23 F. (2d) 941. The estate embarks on its operations with a capitalization consisting of all the property of the decedent. The transfer

of property to the estate at the time of death never results in income, even though enhancement in the value of the property has occurred since the time of its acquisition by the decedent. Everything received by the estate at the time of death is capital."

The foregoing is consistent with the regulations of the Treasury Department which have been approved by the United States Board of Tax Appeals in many instances under the Revenue Acts of 1918, 1921, and 1924. Barnes et al., 8 B. T. A. 360; McCarthy, Executor, 9 B. T. A. 525; Markle et al., 10 B. T. A. 763; Anderson, 10 B. T. A. 1376; Heywood et al., 11 B. T. A. 29; Vanderbilt et al., 11 B. T. A. 291; Miller, 11 B. T. A. 854; Clark, 12 B. T. A. 425; O'Brien et al., 12 B. T. A. 1195; Blodget et al., 13 B. T. A. 1243; Richards, 15 B. T. A. 800; Wolfe, 15 B. T. A. 835; Central Trust Co., 19 B. T. A. 867; and Stearns, Executor, 22 B. T. A. 1319, decided April 28, 1931. The theory that an estate acts merely as the agent of the decedent in disposing of property and that consequently the result is the same as if the decedent himself had sold the property seems inconsistent with the provisions of the statute making the estate a separate and distinct taxable entity. The property sold by the estate is sold for the benefit of the living beneficiary, who will eventually be entitled to receive the proceeds of sale. The decedent no longer has any interest in the property, either actually or theoretically, and, in the absence of any statutory direction, it would seem that the basis should be the basis of those beneficiaries and not the basis of the decedent.

The case of Bingham et al. v. Long, 249 Mass. 79, 144 N. E. 77, 78, 33 A. L. R. 809, involved a complaint for the abatement of an income tax. The testator, of whose will the complainants were executors, died in 1921. After their appointment and during 1921 the executor sold intangible property of the estate of the decedent at a considerable advance over its cost to the decedent, who acquired it subsequent to January 1, 1916, but at a price less than its fair market value on the date of death of the decedent or at the time of the qualification of the executor. A state income tax was claimed on the difference between the cost to the decedent and the amount realized from the sale by the executors. The court said: "The question for decision is whether, in case of a sale by executors, during the settlement of the estate, of intangible property owned by the testator at his death, the basis

for ascertaining whether there has been a gain or a loss for income-tax purposes is the value of such property at the time of the death of the testator or its value at the time of its acquisition by him." The court held that the value at the date of death was the proper basis for ascertaining gain or loss to the estate, and, in the opinion of Chief Justice Rugg, said:

"Although the tax is exacted in these instances from the executor, administrator, or trustee, the person upon whom the burden of the tax fairly rests is the beneficiary, and whether the tax shall be levied at all depends upon the residence of the beneficiary. The right and interest of the beneficiaries in the property of the estate springs into existence at the death of the testator. Treadwell v. Cordis, 5 Gray, 341, 352, 353; Minot v. Amory, 2 Cush. 377; Hooper v. Bradford, 178 Mass. 95, 59 N. E. 678; Old Colony Trust Co. v. Treasurer and Receiver General, 238 Mass. 544, 548, 131 N. E. 321, 16 A. L. R. 689.

"The executor or administrator, while in some respects holding in the right of the deceased, has title in his own right. He is the owner of the personal estate of the deceased although in a fiduciary capacity. * * *

"The decedent did not receive any income by the passage of his property on his death to his executor. The executor became on his appointment accountable for the actual value of the estate. Dudley v. Sanborn, 159 Mass. 185, 188, 34 N. E. 181; G. L. c. 206, § 5. * * * *"

Under the decisions in Merchants' Loan & Trust Co. v. Smietanka, supra, and Brewster v. Gage, supra, and the other authorities cited, it seems to me that the fair market value at the date of decedent's death, if subsequent to March 1, 1913, is the proper basis for the determination of gain or loss upon a sale by an estate during the period of administration. The case of Brewster v. Gage, supra, involved the question as to the date of acquisition of property by a residuary legatee for the purpose of fixing the basis for the determination of gain or loss upon the sale thereof. In consideration of that question, the court said: "The Revenue Act of 1918 and subsequent acts taxed incomes of estates during the period of the administration, including profits on sales of property, *and such gains are calculated on value at date of decedent's death*. [Citing section 219 of the revenue acts of 1918 (40 Stat. 1071), 1921 (42 Stat. 246), 1924 (43 Stat. 275 [26 USCA

§ 960 note]), and 1926 (44 Stat. 32), and art. 343 in Treasury Regulations 45, 62, 65, and 69.] There appears to be no reason why gains or losses to the estate should be calculated on one basis and those to the residuary legatees on another." (Italics supplied.) The Treasury regulations cited by the court provide that the basis for determining gain or loss upon the sale of property by an estate is the value thereof at the date of decedent's death. As was further said by the court in Brewster v. Gage, page 336 of 280 U. S., 50 S. Ct. 115, 117: "These regulations were prepared by the Department charged with the duty of enforcing the acts. The rule so established is reasonable and does no violence to the letter or spirit of the provisions construed. A reversal of that construction would be likely to produce inconvenience and result in inequality. It is the settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons. Logan v. Davis, 233 U. S. 613, 627, 34 S. Ct. 685, 58 L. Ed. 1121; Maryland Casualty Co. v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 64 L. Ed. 297; Swendig v. Washington Water Power Co., 265 U. S. 322, 331, 44 S. Ct. 496, 68 L. Ed. 1036."

In Fawcus Machine Co. v. United States, 282 U. S. 375, 51 S. Ct. 144, 145, 75 L. Ed. 397, the court said: "The regulations were made pursuant to express authority (see section 1309 of the Revenue Act of 1918). They are valid unless unreasonable or inconsistent with the statute. United States v. Grimaud, 220 U. S. 506, 517, 518, 31 S. Ct. 480, 55 L. Ed. 563; International Ry. Co. v. Davidson, 257 U. S. 506, 514, 42 S. Ct. 179, 66 L. Ed. 341. They constitute contemporaneous construction by those charged with the administration of the act, are for that reason entitled to respectful consideration, and will not be overruled, except for weighty reasons. United States v. Moore, 95 U. S. 760, 763, 24 L. Ed. 588; Brewster v. Gage, 280 U. S. 327, 336, 50 S. Ct. 115, 74 L. Ed. 457."

The same reasoning applies to the question here involved and to the regulations relating thereto. In all of the revenue law there are few better illustrations of legislative approval of departmental construction. The statement by the court in Brewster v. Gage, stated above, that gains on sales of property by estates during the period of administration are calculated on the value at the date of decedent's death, although that precise question was not involved in the case being decided, seems to be of especial significance and importance here. In the Gage Case the court further stated that "the rule that ambiguities in tax laws are to be resolved in favor of taxpayers has no application here, because it is impossible to determine which basis would impose a greater burden."

The Committee on Ways and Means of the Sixty-Seventh Congress, First Session, in its report, No. 350, accompanying the Revenue Act of 1921, H. R. 8245, had before it and considered the decision of the Supreme Court in Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305, which had been decided on March 28, 1921, and stated on page 9 thereof with reference to the "basis for determining gain or loss" provided in section 202 of the Revenue Act of 1921, as follows:

"In the case of property acquired before March 1, 1913, under existing law, the basis for determining gain or loss is the fair market price or value of such property as of that date. The decision of the Supreme Court in the case of Merchants' Loan & Trust Co. v. Smietanka (decided Mar. 28, 1921), makes necessary not a fundamental modification of that rule, but a more detailed statement of its application.

"The proposed bill gives explicit effect to the doctrine approved in that decision. * * *

"The special rules embodied in existing law with respect to property which should be included in the inventory, and property acquired by bequest, devise, or inheritance are in substance preserved. An essential change, however, is made in the treatment of property acquired by gift. No explicit rule is found in the present statute for determining the gain derived or the loss sustained on the sale of property acquired by gift; but the Bureau of Internal Revenue holds that under existing law the proper basis is the fair market price or value of such property at the time of its acquisition. This rule has been the source of serious evasion and abuse. Taxpayers having property which has come to be worth far more than it cost give such property to wives or relatives by whom it may be sold without realizing a gain unless the selling price is in excess of the value of the property at the time of the gift. The proposed bill in paragraph (2) of subdivision (a) provides a new and just rule, name-

ly, that in the case of property acquired by gift after December 31, 1920, the basis for computing gain or loss shall be the same as the property would have in the hands of the donor or the last preceding owner by whom it was not acquired by gift."

See, also, report No. 275, Sixty-Seventh Congress, First Session, of the Committee on Finance of the Senate.

Inasmuch as the report on the Revenue Act of 1921 gave explicit approval to the decision in the Smietanka Case in which the Supreme Court held that a trustee receiving property under a will was taxable precisely the same as a beneficiary would be taxable had he received the property direct from the decedent, and made a change in the law so as to provide that in case of a gift the basis for determining gain or loss should be the same as the property would have in the hands of the donor or last preceding owner by whom it was not acquired by gift, it seems to have given approval to the regulations and practice of the Department which used as the basis for determining gain or loss upon a sale by trustees, executors, or administrators the value at the date of death if subsequent to March 1, 1913, or such value or the value on March 1, 1913, whichever was the higher, if the decedent died prior to March 1, 1913.

By permission of the court I state the foregoing as my personal views, inasmuch as this is the first case involving this question in which I have participated since becoming a member of this court. However, in view of the previous decisions of this court, by which I am bound, I concur in the result reached by the majority in this case.