EDITH HILLES DEWEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106231.    Promulgated March 17, 1943.

*Martin W. Meyer, Esq.*, for the petitioner.
*Harry L. Brown, Esq.*, for the respondent.

794

**OPINION.**

HARRON, *Judge:* The question is what the proper basis was of certain securities sold by petitioner during the taxable year. The securities

were received by the petitioner after the death of her father, from an *inter vivos* trust established by him during his lifetime. Under section 113 (a) (5) of the Revenue Act of 1936,[1] the basis of the securities in petitioner's hands is the fair market value at the date of the grantor's death if the securities were obtained by bequest, devise, or inheritance, or if they were obtained from an *inter vivos* trust the income of which was payable to the grantor during his life and the grantor at all times retained the power of revocation of the trust. The principal issue is whether or not petitioner's father retained at all times a power to revoke the trust.

Respondent contends that the grantor did retain at all times power over the trust property which amounted to a power to revoke, and that a power to revest in the grantor is a power to revoke within the meaning of section 113 (a) (5). In the alternative, respondent argues that the amendment of August 20, 1935, was testamentary in character, so that petitioner received the securities "by bequest, devise, or inheritance" within the meaning of section 113 (a) (5). Petitioner argues that the statute must be construed strictly and that under such construction the grantor did not at all times retain the power to revoke the trust, and that the property was not received by petitioner by bequest, devise, or inheritance.

The trust in question was originally for a term of five years. The term was extended twice, and each time it was provided that it should be irrevocable during the period of extension. The grantor did, however, reserve the right to withdraw up to $50,000 of the corpus, and he did reserve the right to change beneficiaries to whom the trust property was to be distributed upon his death. Except for the securities irrevocably set aside for the petitioner in the amendment of May 9, 1930, the grantor was himself the beneficiary as to income, and as to principal upon the expiration of the term of the trust. Only in the event of his death was the principal to be distributed to others. The power to change beneficiaries reserved by the grantor, was, however, broad enough to permit the grantor to name himself or his estate sole beneficiary upon the termination of the trust for any cause,

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death. For the purpose of this paragraph property passing without full and adequate consideration under a general power of appointment exercised by will shall be deemed to be property passing from the individual exercising such power by bequest or devise.

including his death.  Respondent contends that the power reserved by the grantor gave him such complete control over the trust property that the trust was revocable within the meaning of section 113 (a) (5).

The applicable portion of section 113 (a) (5) first appeared in the Revenue Act of 1928, where it was originally proposed in conference. See House Report 1882, 70th Cong., 1st sess., p. 3.  At page 15 of the conference report the following explanation of the provision is given:

A special rule is provided in section 113 (a) (5) by which to determine the basis of property transferred in trust with the right reserved to the grantor at all times prior to his death to revoke the trust where the sale or other disposition of property occurs after the death of the grantor.  This rule includes sales or other dispositions by the trustee and also by a beneficiary of the trust.  In view of the complete right of revocation in such cases on the part of the grantor at all times between the date of creation of the trust and his death, it is proper to view the property for all practical purposes as belonging to the grantor rather than the beneficiaries and to treat the property as vesting in the beneficiaries according to the terms of the trust instrument, not at the date of creation of the trust, but rather on the date of the grantor's death, for the purpose of determining gain or loss on sale or other disposition of the property after the grantor's death by the trustee or by a beneficiary.  Accordingly, it is provided that the basis of such property in the hands of the persons entitled thereto by the terms of the trust instrument after the grantor's death shall be the same as if the trust instrument had been a will executed on the date of his death.  Thus property acquired by virtue of revocable trusts of the kind described is treated, for all practical purposes, the same as though it had been transmitted by the grantor by will at his death.

The above statement from the Conference Committee's report indicates that it was the intention of Congress to treat in the same manner as testamentary transfers, transfers of property over which the grantor retained such control that the property should be treated, for all practical purposes, as belonging to him, and not to the beneficiary.  There is nothing to indicate that the term "right  *  *  *  to revoke" was used in any technical sense, and, in the absence of such indication, we must heed the repeated statements of the Supreme Court to the effect that "the statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property."  *Helvering* v. *Hallock*, 309 U. S. 106, 112.

Here the grantor never gave up completely the power to draw the property back to himself.  Even in a technical sense, he never parted with the right to get back the property for more than five years at a time, and during the period when he was technically unable to revoke the trust he possessed an absolute power to change the beneficiary.  There was nothing to prevent the exercise of that power in favor of his estate or his legal representatives in the event of the termination of the trust by reason of his death.  The existence of that right gave to the grantor such power over the trust property that it must be treated, for all practical purposes, as belonging to him and not to the beneficiary.

Furthermore, the grantor could actually regain possession of the trust corpus during his lifetime without waiting for the term of the trust to expire. He was already the life beneficiary as to income, and the remainder beneficiary as to principal, in the event of the termination of the trust upon expiration of its term during his lifetime. Respondent points out that under the law of Pennsylvania, if the grantor life beneficiary had named himself the sole remainderman, he could have compelled the termination of the trust. Respondent cites *Long* v. *Tradesmen's National Bank & Trust Co.*, 108 Pa. Super. Ct. 363; 165 Atl. 56. See also section 339, American Law Institute, Restatement from the Law of Trusts. Thus it appears that the grantor, at all times during his lifetime, in reality, possessed a power to revoke the trust in question.

An analogous situation is presented in cases arising under section 166, under which the income from a trust is taxable to the grantor if he retains power to revest in himself title to the corpus. In construing that section it has been held that power to change the beneficial interest, which does not prevent a change in favor of the grantor, is such a power as to make the income of the trust taxable to the grantor. *Nora C. Todd et al., Executors*, 32 B. T. A. 1067; affd., 82 Fed. (2d) 1020; *Lelia W. Stokes*, 28 B. T. A. 1245; see *Knapp* v. *Hoey*, 104 Fed. (2d) 99.

The case of *Minnie M. Fay Trust "A"*, 42 B. T. A. 765, relied upon by petitioner, is distinguishable from the present case. In the *Fay Trust* case, it was conceded that the power in question was a power to revoke. That power was possessed, however, by someone other than the grantor. The question was whether or not a power to revoke possessed by someone other than the grantor satisfied the requirements of section 113 (a) (5). It was held that the requirements of the statute were not satisfied. A holding that the power to revoke possessed by someone other than the grantor does not come within section 113 (a) (5) by no means precludes the holding that the power possessed by the grantor in the present case constituted a power to revoke within the meaning of the statute.

It is concluded that the grantor at all times during his lifetime did possess a power to revoke the trust in question, within the meaning of the statute. Accordingly, the basis of the property received by petitioner from that trust was the fair market value at the time of the grantor's death, and the date of acquisition for purposes of determining the recognizable gain or loss on the sale of securities was also the date of the grantor's death.

The conclusion reached makes it unnecessary to consider respondent's alternative contention.

*Decision will be entered for the respondent.*