**BANKERS TRUST COMPANY, Trustee, Sumner Moore Kirby Trust, Gloria Kirby Conahay and Charles C. Austin, General Guardian of the Estate of Helene Louise Kirby,**

v.

**The UNITED STATES.**

No. 65–54.

United States Court of Claims.

Dec. 4, 1957.

Samuel J. Foosaner, Newark, N. J., for plaintiffs. Foosaner, Saiber & Schlesinger, Newark, N. J., were on the briefs.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

MARIS, Circuit Judge (sitting by designation).

This is a suit to recover income taxes which the plaintiffs allege were erroneously paid for the taxable year 1948 in the amount of $1,718,504.43. The Bankers Trust Company, trustee of the Sumner Moore Kirby Trust, one of the plaintiffs, filed a Federal fiduciary income tax return for the trust for that

year on the cash receipts and disbursements basis reporting a tax liability of $1,718,504.43 which it paid to the collector. Included in taxable income reported on the return was the sum of $3,-428,419.77 as 50 percent of net gain from long term capital gain resulting from the exchange of capital assets, stock of Fremkir Corporation for stock of F. W. Woolworth Company. The gain resulted from the use of a cost basis of $635,066.73. If, as the plaintiffs now contend should be done, a cost basis of $8,228,403.76 were used, no income tax liability would have arisen for the year 1948.

The trustee timely filed a claim for refund of the entire amount of taxes paid by the Sumner Moore Kirby Trust for the year 1948. Gloria Kirby Conahay and the guardian of Helene Louise Kirby timely filed claims for refund for the purpose of protecting their respective interests in the alleged overpayment of 1948 taxes. All three refund claims were grounded upon the same issues presented in this suit. Before the statutory notices of disallowance of these three claims for refund were issued as provided in section 3772 (a) (2) of the Internal Revenue Code of 1939 plaintiffs commenced this suit. Consequently, the disallowance notices were not issued.

The circumstances out of which the issues presented in this case arise are that on September 15, 1931, Sumner Moore Kirby created a trust, with the Bankers Trust Company named as trustee. The corpus of the trust consisted of 30,000 shares of stock of the Fremkir Corporation which had been given to Sumner Moore Kirby by his father in 1923, when the corporation was organized. Prior to the death of Sumner Moore Kirby the basis for determining gain or loss of the stock in the hands of the trustee was $635,066.73, the sum which was used in determining the net long term capital gain reported in the fiduciary income tax return.

The trust instrument provided in Article First that the donor was to receive the first $80,000 of income for life, the next $12,000 was payable to Doris Kirby, his wife, for life, and the balance of income was payable to his daughter Gloria Kirby (now Gloria Kirby Conahay), for life. The trust instrument further provided by Article Eighth, as follows:

"Eighth: Notwithstanding anything to the contrary herein contained, the Donor may, from time to time, during the continuance of the trust, by instrument in writing executed and acknowledged in the manner required for a deed of real property so as to enable it to be recorded in the State of New York and delivered to the Trustee, with the written consent of the Donor's father, Fred M. Kirby, his executors, administrators or legal representatives, modify or alter in any manner, or revoke in whole or in part, this Indenture and the trusts then existing, and the estates and interests in property hereby created, and in the case of such revocation said instrument shall direct the disposition to be made of the trust fund, or of the portion thereof affected by such revocation, and the Trustee shall make, execute and deliver such instruments, if any, and make such conveyances and transfers of property as may be necessary or proper in order to carry the same into effect, and no one shall have any right, interest or estate under this Indenture except subject to such proper modification, alteration or revocation thereof."

By an amendment made in the trust instrument under date of April 28, 1932, it was provided that in case of the death of Sumner Moore Kirby, two-thirds of the corpus should be divided between Gloria Kirby Conahay and his widow and any other issue surviving him. Subsequently on December 14, 1934, Article Eighth of the trust instrument was amended by adding at the end of the article the following:

"Provided, However, that this power of modification, alteration or

revocation shall not be exercised so as to operate in any manner to increase the interest of the Donor or his estate in the income from the trust funds or to revest in the Donor or his estate title to any part of the principal of the trust funds or accumulated income thereon."

On April 7, 1945, Sumner Moore Kirby died at which time he was survived by his former wife, Doris Kirby Barbour, and his two daughters, Gloria Kirby Conahay and Helene Louise Kirby. Thereafter, one-third of the corpus of the trust was distributed to Gloria Conahay together with the accumulation of income and one-third to Helene Kirby. The remaining one-third of the corpus was held by the trustee for the continuing trust for the benefit of Mrs. Barbour and Gloria Conahay.

During his lifetime the entire income of the trust was taxable to Sumner Moore Kirby and the Federal income tax due and payable thereon was paid to the United States accordingly.

The trust property was not reported as part of the gross estate on the Federal estate tax return filed by the executor. Upon examination of the Federal estate tax return, the Commissioner of Internal Revenue determined that the trust should be included in the gross taxable estate. Subsequently a compromise was effected, whereby the estate tax liability arising from the inclusion of the trust in the taxable estate was fixed at $3,088,780.47. This compromise was made on the basis of a 25 percent reduction from the ascertained value of the 30,000 Fremkir Corporation shares which comprised the principal of the trust. Thus the ascertained value of the Fremkir shares, $8,288,403.76, was reduced to $6,171,302.84 and estimated trust administration expenses of $185,-063.34 were subtracted, leaving a final valuation of $5,986,239.50. Based upon these figures a closing agreement was signed by the trustee, the executor and the various beneficiaries under the trust on January 7, 1949, and was signed by the Acting Commissioner of Internal Revenue on February 14, 1949, and approved by the Acting Secretary of the Treasury on March 21, 1949.

The decedent's estate was insolvent and the burden of paying the Federal estate tax accordingly fell upon the Sumner Moore Kirby Trust under the provisions of section 827 (a) and (b) of the 1939 Internal Revenue Code, 26 U. S.C.A. § 827(a, b). To enable the trust to pay the tax, it was necessary for it to liquidate a large part of its holdings. Inasmuch as the 30,000 shares of Fremkir stock owned by the trust constituted the only holding in the trust principal account and it had no ready market value, being a family corporation, it was decided that the only way of getting marketable assets was through the Fremkir Corporation. Accordingly, negotiations were instituted with the officers of the Fremkir Corporation. This resulted in the exchange with such corporation on September 10, 1948, of the 30,000 shares of Fremkir Corporation owned by the trust for 173,500 shares of F. W. Woolworth Company stock. It is upon this exchange that the trustee reported a gain and paid the tax for the recovery of which the present suit was brought.

Having provided itself with necessary funds by effectuating the exchange of the Fremkir Corporation stock for stock which was marketable, the trustee made payment of $3,100,000 to the Collector of Internal Revenue on November 1, 1948. This payment was on account of the estate tax liability asserted against it under section 827 (a) and (b) of the Internal Revenue Code.

The fair market value of the Fremkir Corporation stock held by the trust on April 7, 1945, the day of Sumner Moore Kirby's death, was $8,228,403.76. The fair market value of the F. W. Woolworth Company stock received by the trust in exchange for the Fremkir Corporation stock on September 10, 1948, was $7,493,031.25. This valuation figure was used in determining the net long term capital gain reported as taxable from the exchange in the fiduciary

income tax return of the trust for the year 1948.

█ The principal question which this case presents, and the only one we need consider, is whether the basis for computing gain or loss on the exchange of the Fremkir stock in the hands of the trustee after the death of Sumner Moore Kirby was the fair market value of that stock at the date of Kirby's death, or whether that basis continued to be the same as it had been in the hands of the trustee prior to Kirby's death. The plaintiffs assert that the fair market value of the stock at the time of Kirby's death must be taken as its basis for determining the gain or loss upon its subsequent exchange and they rely upon section 113 (a) (5) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 113(a) (5), which provides as follows:

"§ 113. Adjusted basis for determining gain or loss—

"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that—

\* \* \* \* \*

"(5) Property transmitted at death. If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust \* \* \* the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death. \* \* \*"

We think that the plaintiffs' contention is correct and must be sustained. It will be seen that the effect of section 113 (a) (5) is to provide that in the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor the basis of the property in the hands of the persons entitled to it under the terms of the trust instrument after the grantor's death shall be its fair market value at the time of his death, provided the grantor has reserved the right to revoke the trust.

Under the terms of the trust instrument involved in the case before us, the grantor, Sumner Moore Kirby, received a large portion of the income for life and had at all times during his life the power by amendment of the trust instrument to order and direct the disposition of the remainder of the income. Furthermore, Kirby as grantor reserved at all times prior to his death the right to revoke the trust and in the instrument of revocation to direct the disposition to be made of the trust funds or of the portion thereof affected by the revocation.

It is true that by the amendment to the trust instrument executed on December 14, 1934, Kirby added to Article Eighth, which gave him the power of revocation, a proviso to the effect that the power of revocation should not be exercised so as to increase his interest or that of his estate in the income from the trust funds or to revest in him or his estate title to any part of the principal thereof. But it is perfectly clear that under Article Eighth of the trust instrument as thus limited by the amendment Kirby retained at all times full power to revoke the trust as such *in toto* and by the instrument of revocation to direct the payment of the trust funds to anyone other than himself or his estate. This was sufficient to satisfy the statutory test. Porter v. Commissioner, 1933, 288 U.S. 436, 443, 53 S.Ct. 451, 77 L.Ed. 880.

The distinction to be made is between the power to revoke a trust created by a deed of grant and convert it into an outright gift, on the one hand, and the power wholly to revoke the original grant and revest the corpus in the grantor, on the other. It is the latter right which the proviso that Kirby added to Article Eighth of the trust instrument barred him from exercising, while it is only the former much more limited right which section 113 (a) (5) stipulates must be reserved by the grantor in order that the trust assets may take the stepped-up basis at his death for which that subsection provides. In the case before us, at any time prior to Kirby's death he could have revoked the trust and directed the trustee to pay over the property comprising the trust fund as an outright gift to his daughters or to anyone else except himself. If he had done this the trust would have been completely revoked and wiped out of existence, and the proviso added by the amendment of December 14, 1934, would have been in no way violated.

In reaching the conclusion that section 113 (a) (5) is applicable for determining the basis of the Fremkir Corporation stock upon its exchange by the trustee, we have not overlooked the fact that the exercise of Kirby's power to revoke the trust was subject to the written consent of his father or the legal representative of the latter. However, since the father had no adverse interest in the disposition of any part of the principal or income of the trust the law will presume that he and his personal representative would be amenable to the wishes of his son, the grantor, as to any changes which the latter might desire to make in the disposition of the fund and that Kirby accordingly had in fact the effective power of revocation. Loeb v. Commissioner, 2 Cir., 1940, 113 F.2d 664, 667, 132 A.L.R. 781, certiorari denied 311 U.S. 710, 61 S.Ct. 317, 85 L.Ed. 461. Requiring a disinterested person to join in the exercise of a power of alteration or revocation does not in fact deprive the grantor of practical control, as has long been recognized by Congress. See e. g., Internal Revenue Code of 1939, sections 166 and 167, 26 U.S.C.A. §§ 166, 167. Indeed in the case of this very trust the annual income was taxed to the grantor, in part at least, upon this theory. We think that the recognition of this fact of life, which Congress made explicit in sections 166 and 167 of the Internal Revenue Code of 1939, and which the Commissioner thus applied in taxing to the grantor the ordinary income of the trust, must be regarded as implicit in the analogous provisions of section 113 (a) (5) of the Code and must be followed in applying that subsection to the facts of this case.

Since the fair market value of the Fremkir stock on the date of Kirby's death was much in excess of the value of the F. W. Woolworth stock subsequently received by the trustee in exchange for it, no taxable gain was realized by the trust upon that exchange in 1948 and there was accordingly no income tax liability by the trust for that year.

The plaintiffs are entitled to recover, and judgment will be entered in the amount of $1,718,504.43, with interest on $429,626.11 thereof from March 15, 1949, on $429,626.11 thereof from June 14, 1949, on $429,626.11 thereof from September 15, 1949, and on $429,626.-10 thereof from December 16, 1949, as provided by law.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.