Boston Safe Deposit and Trust Company, trustee, *vs.*
State Tax Commission
(and a companion case).

Suffolk.   April 3, 1963. — May 7, 1963.

Present: Wilkins, C.J., Spalding, Cutter, Kirk, & Spiegel, JJ.

*Taxation,* Income tax.   *Statute,* Construction.

Ambiguities in tax statutes are to be resolved in favor of the taxpayer, and
the right to tax is not to be extended by implication.   [105]

In G. L. c. 62, § 7, as amended by St. 1954, c. 599, § 2, and St. 1955, c. 635,
§ 3, the words "property acquired by bequest, devise or inheritance"
included property held by the trustee of a revocable but unrevoked trust
at the death of the settlor, and the basis for income tax purposes of com-
puting gain or loss from the sale of securities by the trustee after the
settlor's death was the fair market value of the securities on the date of
his death.   [101–102, 106]

Appeals from decisions by the Appellate Tax Board.

*John E. Rogerson* (*William N. Swift* with him) for the
taxpayers.

*Herbert E. Tucker, Jr.,* Assistant Attorney General, for
the State Tax Commission.

Cutter, J.   These are appeals from decisions of the Ap-
pellate Tax Board.   One is by the appellant (the trustee)
as trustee of a revocable trust established by Ida Dow in
1929.   The other is by the trust company and another as
trustees of a revocable trust made in 1953 by Stanwood
Wellington.   The board, in each case by a majority deci-
sion, sustained the action of the commission in denying an
application for abatement of an additional income tax as-
sessed under G. L. c. 62 with respect to gains, alleged to
have been realized in 1956 by the Dow trust and in 1957 by
the Wellington trust.   The board denied in each case four
requests for rulings by the trustees.[1]   The majority of the

---

[1] The significant requests in the Dow case were the following: "2. That
the property of the trust . . . is 'property acquired by bequest, devise or in-
heritance' as those words are used in" G. L. c. 62, § 7 (d), as amended by
St. 1954, c. 599, and St. 1955, c. 635.   "3. That the basis for computing gain
or loss from the sale of securities comprising the trust . . . is the fair market
value of such securities on the date of the death of" Ida Dow.

board filed no opinions. The one dissenting member fully stated the reasons for his view in a careful opinion. The facts in each case are in most respects closely similar and are not in dispute.[2] They are admitted in the pleadings and stated in a stipulation and exhibits in each case.

Ida Dow died on September 25, 1955, a resident of Massachusetts, without having revoked her trust. Thereafter, during 1956, the trustee sold securities for $720,998.20. If the proper basis of computing the gain was the value of the securities at the date of Ida Dow's death, a gain of $20,738.88 was realized. If the proper basis was the adjusted cost of each security to Ida Dow or to the trustee, there was a realized gain of $169,330.79. After giving effect to a partial abatement (the correctness of which is not questioned) the commission's use of the lower basis ($551,667.41) resulted in an additional tax of $14,808.49 (including interest). This additional tax has been paid. The trustee duly appealed to the board from the commission's denial of its application for abatement.

The facts in the Wellington case differ only slightly from those in the Dow case. The principal differences are noted in the margin.[3]

The dispute arises because of certain amendments of G. L. c. 62, § 7 (as amended through St. 1953, c. 654, § 41),[4]

---

[2] In each record certain documents unnecessarily have been printed which in one record could have been incorporated by reference to the other record. See *Doherty* v. *Woburn*, 345 Mass. 523, fn. 1.

[3] Wellington was a resident of Massachusetts when his trust was established. He died on June 9, 1957, a resident of California, without having revoked his trust. During the balance of 1957, the trustee sold substantial amounts of securities. If the proper basis of computing gain or loss was cost to the settlor or trustees, there was a realized gain of $274,826.10, whereas if market value at Wellington's death was the proper basis, there was a loss of $17,220.40. The commission computed the gain on the former basis and assessed an additional 1957 income tax of $21,600.51 (including interest). The tax has been paid. The trustees duly appealed from the commission's denial of their application for abatement. Requests similar to those in the Dow case (fn. 1, *supra*) were filed and denied.

[4] Prior to the effective date of St. 1954, c. 599, § 2, for the purpose of "determining gains or losses realized from the sale of capital assets," § 7, so far as now pertinent read, "If the property . . . [except certain stock dividends] was acquired by gift, the basis of determination of the gain or loss shall be the

which were effected by St. 1954, c. 599, § 2, and St. 1955, c. 635, § 3. Section 7, after the 1955 amendment,[5] read, so far as relevant, ". . . The basis for computing gain or loss from the sale . . . of property acquired after January . . . [1, 1916] shall be determined as follows . . . (b) the basis of property acquired by gift prior to July . . . [1, 1954] shall be the fair market value on the date acquired; (c) the basis of property *acquired by gift after June* . . . [30, 1954] shall be the basis to the donor or the last preceding owner by whom it was not acquired by gift, or the fair market value at the date of the gift, whichever is lower; (d) the basis of property acquired *by bequest, devise or inheritance* shall be the fair market value of the property on the date acquired . . ." (emphasis supplied).

In *Commissioner of Corps. & Taxn.* v. *Ayer*, 323 Mass. 579, this court held that the basis of determining gains, realized by the trustee of a revocable trust after the settlor had died without having revoked the trust, was the value of the securities on the date of the settlor's death. Under the pre-1954 form of § 7 (see fn. 4, *supra*) no distinction was made between acquisition by gift and acquisition by descent, devise, intestacy, and other forms of devolution at death. The statutory word "gift" was then all inclusive of all forms of transmission of property which did not constitute "purchase." As to this form of the statute, the *Ayer* opinion said (pp. 582–583), ". . . the statute makes the basis of determination of the gain the date the property was 'acquired by gift,' not the date when the beneficiaries became 'interested' in the property. . . . [U]ntil the death of the settlors their respective beneficiaries had acquired nothing certain. Until then their ultimate enjoy-

value on the date when it was so acquired." As to property acquired "by purchase" after January 1, 1916, the basis of gain or loss [with exceptions not here relevant in the case of depreciable property and property which had been the subject of a distribution of capital] was "the cost thereof."

[5] The trustees assert correctly that St. 1955, c. 635, § 3, so far as here pertinent, made only formal and not substantive changes in § 7, as amended by St. 1954, c. 599, § 2. The 1955 amendment was applicable to all the gains here discussed, but we perceive no relevant change in law that was intended by the 1955 act not also intended by the 1954 statute.

ment . . . was doubtful, and there was no gift. . . . [The settlors'] control continued until the time when the power of revocation could no longer be exercised. That time was when the respective settlors died. That was when the respective beneficiaries 'acquired' the property 'by gift.' That fixed the date which . . . [§ 7] makes the basis of determination of the gain." The *Ayer* case was cited with approval in *Second Bank–State St. Trust Co.* v. *State Tax Commn.* 337 Mass. 203, 210, where it was said that "the devolution of property subject to a revocable trust at the death of the settlor (although not a testamentary transfer, see *National Shawmut Bank* v. *Joy,* 315 Mass. 457 . . .) was, in practical effect upon the remainder interests, the same as the transfer of property by will or intestacy." See *Second Bank–State St. Trust Co.* v. *Pinion,* 341 Mass. 366, 369–371.

In 1954 House Doc. No. 89, par. 20, the commission recommended legislation in the following terms: "20. INCOME TAXATION, GAIN OR LOSS ON PROPERTY RECEIVED BY GIFT. A loophole exists whereby a substantial amount of appreciation which has taken place with respect to property during the time it was held in the hands of a donor has escaped taxation through the simple device of making a gift or assignment. If the basis for determining gain in the hands of the donee is changed to reflect the cost to the donor, the entire appreciation during the period held by both the donor and the donee will be properly subject to tax."[6] This recommendation by its terms seems to have been aimed solely at the situation which then existed under § 7 with respect to ordinary inter vivos gifts. After such a gift the Massachusetts basis for determining gain or loss upon a subsequent sale by the donee was the value of the property given when the gift was made. As to ordinary inter vivos gifts made after 1920, the different Federal income tax rule (see Int. Rev. Code of 1939, § 113 [a] [2] ; Int.

---

[6] This recommendation was accompanied by 1954 House Bill No. 109. Upon the basis of this bill and of 1954 House Bill No. 110, there was reported 1954 House Bill No. 2895, which was enacted as St. 1954, c. 599. Section 1 of this statute amended G. L. c. 62, § 5 (c), to make it consistent with the amendment of § 7 effected by c. 599, § 2.

Rev. Code of 1954, § 1015) had provided as the donee's basis of gain or loss upon a subsequent sale the lower of (a) the basis of the donated property to the donor, and (b) its market value at the date of gift. With respect to gifts in trust, revocable by the donor and reserving to him income for life, the Federal income tax act had been and remained consistent with the *Ayer* case. It treated property held under such a revocable trust as received from the decedent at his death just as if acquired by will or intestacy and as having, after the donor's death, the value existing at his death as the basis of gain or loss upon a subsequent sale. Int. Rev. Code of 1954, § 1014 (b), formerly Int. Rev. Code of 1939, § 113 (a) (5).[7]

Thus, the state of the law, when the 1954 amendment of § 7 was enacted, may be summarized: (1) The existing law relating to the basis of gain or loss for income tax purposes, both Federal, in most cases (fn. 7), and State (the *Ayer* case), gave to the property in a trust revocable by the donor a new tax basis at the settlor's death as it did to property forming a part of the probate estate; (2) For Federal purposes the property subject to many other inter vivos gifts would retain the donor's tax basis (if lower than value at date of gift), whereas under State law the basis of gain or loss on subsequent sale of such property was its value at the date of the gift. The legislative history shows a clear intention that the State basis in the second type of transfer thereafter be the same as the comparable Federal tax basis. That, however, is the extent of what seems to have been intended by the then pending proposals.

After the enactment of the 1954 amendment, the commission in 1956 adopted a regulation providing that the "basis

---

[7] The history of § 113 (a) (5) is discussed in *Dewees,* 1 T. C. 791, 796, where it is said that the provision (in a more restricted form) first appeared in the Revenue Act of 1928, § 113 (a) (5), 45 Stat. 791, 818. See Technical Changes Act of 1953, § 203, 67 Stat. 615, 618; Rabkin and Johnson, Federal Income, Gift, and Estate Taxation, § 54.11, and code vol. § 1014, pp. 624–626. See also *Bankers Trust Co.* v. *United States,* 156 F. Supp. 930, 933–934 (Ct. Cl.); *Beckman Trust,* 26 T. C. 1172, 1180–1182; Casner, Estate Planning (3d ed.) 125–126. Cf. *Pierson* v. *Commissioner of Int. Rev.* 253 F. 2d 928, 931 (3d Cir.); *Commonwealth Trust Co.* v. *United States,* 96 F. Supp. 712, 715–718 (W. D. Pa.); *Spicer* v. *United States,* 153 F. Supp. 472, 475–477 (Ct. Cl.); *Post,* 26 T. C. 1055, 1059. Cf. also *Maguire* v. *Commissioner of Int. Rev.* 313 U. S. 1, 3–8.

of property in the hands of a trustee where the gift in trust is incomplete is the same as the basis of such property in the hands of the donor. A gift in trust is incomplete where there exists a power of disposition exercisable by the grantor of the trust or a non-adverse party, or both, and such power may be exercised without the approval of an adverse party. A 'power of disposition' includes a power to alter the interest in corpus and income among beneficiaries as well as a power to revoke the trust. . . . *Example:* A creates a trust in 1955 for the benefit of his son and reserves a power to revoke the trust at any time. The transfer into trust is not considered to be a final and completed gift until A either dies or releases his power of revocation.''

In 1958, the statute was again amended by St. 1958, c. 576, carrying out the thirteenth recommendation in the commission's 1957 report to the Legislature (1958 House Doc. No. 99) which is set out in the margin.[8] The 1958 statute had the effect of setting aside the commission's regulation if it applied after the death of the donor and was valid.

What has been said shows that a confused statutory situation was created by the 1954 and 1955 amendments of § 7. We are assisted by the well established principle that ambiguities in tax statutes are to be resolved in favor of the taxpayer and that the right to tax is ''not to be extended by implication.'' See *Curtis* v. *Commissioner of Corps. & Taxn.* 340 Mass. 169, 173; *Dennis* v. *Commissioner of Corps.*

---

[8] ''13. REVISION OF BASIS OF PROPERTY RECEIVED AS A RESULT OF CERTAIN TRANSFERS PRIOR TO THE DEATH OF THE TRANSFEROR. The present . . . income tax law establishing the basis for determining gain or loss on the sale of property discriminate[s] in favor of persons who have acquired property by bequest, devise or inheritance and against persons who have irrevocably become entitled to property at a decedent's death as a result of a transaction . . . during the decedent's lifetime. While in both . . . situations the property is subject to an inheritance tax . . . persons falling within the former category are entitled to use the date of death value as their basis, whereas those falling within the latter category, such as trustees of revocable trusts . . . must take as their basis either the basis of the property in the hands of the grantor or the value at the time of his death, whichever is lower. . . . To remedy this inequity, the proposal provides in substance that wherever property has been acquired from a decedent in a transaction of the type which is covered by the inheritance tax, then the basis of such property after the decedent's death shall be its value at the time of such death.''

*& Taxn.* 340 Mass. 629, 631. Taking into account the background in which the 1954 and 1955 amendments were enacted, we see no indication of legislative intention to change the rule of the *Ayer* case, 323 Mass. 579. There is very close practical resemblance between the devolution of property under a revocable trust at the death of a settlor and the devolution of property by will at the death of the testator and both have similar consequences in various respects. See, e.g., *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 469–478; *Second Bank–State St. Trust Co.* v. *Second Bank–State St. Trust Co.* 335 Mass. 407, 410. This practical consideration supports our interpretation of the provision in the 1955 statute that the ''basis of property acquired by bequest, devise or inheritance shall be the fair market value of the property on the date acquired'' as including property held at the settlor's death by the trustee of a trust revocable by the settlor during his life. This interpretation of the statute also avoids constitutional doubts (see *Opinion of the Justices,* 341 Mass. 760, 785) which the commission's interpretation of the 1954 and 1955 amendments might present under the Forty-Fourth Amendment to the Constitution of the Commonwealth (requiring income taxes to be ''levied at a uniform rate . . . upon incomes derived from the same class of property'').

Because the 1954 and 1955 amendments did not change the rule in the *Ayer* case, the commission's 1956 regulation (if intended to relate at all to sales after the donor's death) cannot be applied to require use of the settlors' tax bases (of gain or loss) upon the trustees' sales of property in the Dow and Wellington trusts after the death of the settlors. The requests for rulings (numbered 2 and 3, fns. 1 and 3, *supra*) should have been given.

The decisions of the Appellate Tax Board are reversed. The cases are remanded to the board. Abatements are to be granted in accordance with this opinion. The trustees are to have costs of these appeals.

*So ordered.*