Chirillo *v.* Commissioner of Revenue.

THOMAS R. CHIRILLO & another[1] *vs.* COMMISSIONER OF REVENUE.

No. 86-1015.

Suffolk.   October 20, 1987. — November 27, 1987.

Present: DREBEN, KASS, & FINE, JJ.

*Taxation*, Appellate Tax Board: appeal to Appeals Court, formal procedure, findings; Waiver; Income Tax; Abatement; Interest and Penalties. *Waiver. Statute*, Construction.

Taxpayers who appealed from a decision issued, after a proceeding under the formal procedure, by the Appellate Tax Board without findings of fact were bound by the board's implicit findings of fact, where they had made no timely request under G. L. c. 58A, § 13, for written findings and a report. [99-100]

Taxpayers appealing a decision of the Appellate Tax Board after a proceeding under the formal procedure had adequately preserved for appellate review the question of the interpretation of G. L. c. 62C, § 28, where they raised the issue in their petition for abatement and argued it before the board. [100-101]

The Commissioner of Revenue is required to consult his own records to determine whether income tax payments had been withheld from a taxpayer's income and to credit such payments against any tax due before calculating, under G. L. c. 62C, § 28, the penalty due on account of the taxpayer's failure to file an income tax return. [102-105]

The court declined to rule, on the record before it, whether the Commissioner of Revenue must credit Federal Insurance Contributors Act taxes withheld from a taxpayer's income against any tax due before calculating under G. L. c. 62C, § 28, the penalty due on account of the taxpayer's failure to file an income tax return. [105-106]

APPEAL from a decision of the Appellate Tax Board.

*Michael P. Mack* for the taxpayers.

*Tung Huynh*, Assistant Attorney General, for the Commissioner of Revenue.

[1] Rita Chirillo, his former spouse.

FINE, J. This is an appeal by Thomas R. and Rita Chirillo (taxpayers) from a decision of the Appellate Tax Board (board), after hearing, granting them a partial abatement of the Massachusetts income tax assessed against them for 1980. After certain procedural underbrush is removed, the question is whether, when a taxpayer fails to file a return, the Commissioner of Revenue (Commissioner) may, under G. L. c. 62C, § 28,[2] balloon a tax liability of $56 into a debt to the tax collector in the amount of $2,264. The taxpayers assert, first, that the board improperly denied their request, under G. L. c. 58A, § 13, for a report and written findings of fact, and second, that the board incorrectly interpreted G. L. c. 62C, § 28, in calculating the abatement. The taxpayers' procedural contention is lacking in merit. Nevertheless, although the Commissioner argues to the contrary, the record of the proceedings before the board is adequate to enable us to reach the question of statutory interpretation raised by the taxpayers. We agree with the taxpayers that the board's interpretation was incorrect. Accordingly, we reverse and remand for recalculation of the abatement consistent with our interpretation of the statute.

1. *The procedural issue.* At the outset, we must determine what, if any, issues are open for appellate review. After proceeding under the formal procedure, compare G. L. c. 58A, § 7A, the board issued its decision without findings of fact. The taxpayers' request for findings of fact and a report, filed more than ten days after the board's decision, was properly denied as untimely. G. L. c. 58A, § 13.[3] See *Boston Five*

---

[2] General Laws c. 62C, § 28, inserted by St. 1976, c. 415, § 22, provides: "If a person who has been notified by the commissioner that he has failed to file a return or has filed an incorrect or insufficient return refuses or neglects within thirty days after the date of such notification to file a proper return, or if a person has filed a false or fraudulent return or has filed a return with a willful attempt in any manner to defeat or evade the tax, the commissioner may determine the tax due, according to his best information and belief, and may assess the same at not more than double the amount so determined, which additional tax shall be in addition to the other penalties provided by this chapter."

[3] General Laws c. 58A, § 13, as amended through St. 1985, c. 314, § 1, in part, provides: "The board shall make a decision in each case heard by

*Cents Sav. Bank* v. *Assessors of Boston*, 317 Mass. 694, 699 (1945), *William Rodman & Sons* v. *State Tax Commn.*, 364 Mass. 557, 559-560 (1974). Before the board reached its decision on the abatement, the taxpayers had filed a request for findings of fact under Rule 29 of the Appellate Tax Board.[4] The board was under no obligation to comply with this request. Contrary to the taxpayers' assertion on appeal, the rule 29 request was not a substitute for a timely postdecision request for written findings and a report, as provided by G. L. c. 58A, § 13. In the absence of a timely request for written findings and a report, the taxpayers waived any right to appeal from rulings of the board "upon questions as to the admission or exclusion of evidence, or as to whether a finding was warranted by the evidence." G. L. c. 58A, § 13 (note 3, *supra*). *Assessors of Lynn* v. *Zayre Corp.*, 364 Mass. 335, 338-339 (1973). *Martin* v. *State Tax Commn.*, 366 Mass. 850 (1975). *Palladino* v. *Assessors of Braintree*, 373 Mass. 665, 669 (1977). Thus, the taxpayers are bound by the board's implicit findings of fact, among which was the finding that the taxpayers had failed to file a timely tax return for 1980 or to pay their tax on time.

As the case had proceeded before the board under the formal procedure, we retain the authority to review questions of law which are sufficiently identified in the record and which were "raised in the proceedings before the board." G. L. c. 58A, § 13 (note 3, *supra*). The taxpayers adequately preserved at

---

it and may make findings of fact and report thereon in writing; . . . . The board shall make such findings and report thereon if so requested by either party within ten days of a decision without findings of fact. . . . If no party requests such findings and report, all parties shall be deemed, to have waived all rights of appeal to the [A]ppeals [C]ourt upon questions as to the admission or exclusion of evidence, or as to whether a finding was warranted by the evidence. . . . The decision of the board shall be final as to findings of fact. . . . The [Appeals C]ourt shall not consider any issue of law which does not appear to have been raised in the proceedings before the board." See also rule 32 of the Appellate Tax Board.

[4] Rule 29 of the Appellate Tax Board provides: "Requests for findings of facts and rulings of law, if any are made, shall be filed under separate headings, and a copy given to the adverse party, prior to the argument or prior to the submission of the appeal without argument, as the case may be, unless special leave to file later is given by the Board."

least the issue of statutory interpretation for review by raising it in their petition to the board, *Assessors of Brookline* v. *Buehler*, 396 Mass. 520, 532 (1986), and by arguing it before the board. The taxpayers, moreover, have met their "burden [as appellants] of creating and assembling a record sufficient for this court to decide [that aspect of] the case." *Assessors of Norwood* v. *Barton*, 384 Mass. 699, 701 (1981). The legal basis of the board's decision is clear. The board's determination of the amount due is identical, to the penny, to that submitted by the Commissioner to the board, indicating, as conceded in the Commissioner's brief, that the board adopted the Commissioner's methodology and, thus, his interpretation of the statute.

2. *The question of statutory interpretation.* We recite the facts relevant to this issue, either as they were found by the board or were conceded in the Commissioner's brief.

The taxpayers had income in 1980 in the amount of $30,310.[5] Among the deductions from that income for State tax purposes, authorized by G. L. c. 62, § 3, was a $1,588 deduction for Federal Insurance Contributions Act (FICA) tax withheld from income during the year. The taxpayers' taxable income for State tax purposes was $23,178, and their total tax burden for that year was $1,246. State taxes in the amount of $1,190 were withheld during 1980. The Massachusetts income tax due, if timely paid, therefore, would have been $56. In 1984, the Commissioner notified the taxpayers of an assessment against them for 1980 income taxes, late penalty, and interest, in the amount of $4,574. The Commissioner's source of information for his assessment was the taxpayers' 1980 Federal tax return. The Commissioner arrived at the $4,574 figure by doubling the taxes he believed due based on the taxpayer's gross income and adding statutory interest and penalties. In determining the amount of taxes due in accordance with its interpretation of the requirements of G. L. c. 62C, § 28, the Commissioner did not credit the taxpayers either for taxes withheld by the Commonwealth or for FICA payments made to the Federal government.

---

[5] The amounts referred to throughout the opinion are rounded to the nearest dollar.

The taxpayers promptly filed with the Commissioner an application for an abatement. They attached a signed and completed 1980 income tax return, with W-2 forms attached. The Commissioner in due course determined that the amount due from the taxpayers was $2,264, and that they were entitled to an abatement from the original assessment of $4,574, therefore, in the amount of $2,310. The Commissioner based this determination upon his calculation that the total tax due on the taxpayers' 1980 income was $1,246, which was doubled under the penalty provision of G. L. c. 62C, § 28, to yield $2,492. That amount was then reduced by $1,190, the amount of State income taxes withheld, to yield $1,302. Interest and penalties were computed and added to the $1,302 to yield the assessment of $2,264. The Commissioner reached this relatively large amount despite the fact that had the taxpayers promptly filed their 1980 tax return they would have owed only $56. The taxpayers, dissatisfied with the amount of the abatement, appealed to the board, pursuant to G. L. c. 58A, §§ 6, 7.

The board held a hearing and reached a decision in which it adopted the Commissioner's figures and methodology and abated the tax by the amount of $2,310, the difference between the Commissioner's original assessment of $4,574 and his later assessment of $2,264.

General Laws c. 62C, § 28, was applicable because the board found that the return was not filed within thirty days of notice from the Commissioner. The Commissioner, therefore, could "determine the tax due, *according to his best information and belief*, and . . . assess the same at not more than double the amount so determined . . . ." (emphasis supplied). G. L. c. 62C, § 28 (note 2, *supra*). The parties are at odds primarily over whether, under § 28, the income taxes withheld by the Commonwealth should have been subtracted from the income tax determined to be due on the taxpayers' 1980 income, as revealed by their Federal income tax form, before the Commissioner doubled the tax determined to be due. In other words, the question is whether, in order to comply with the requirement that, in determining the tax due, the Commissioner should use his "best information and belief," he is obliged to consult his own records about whether tax payments had been withheld.

We are guided in our interpretation by the principle that "[t]axing statutes are to be construed strictly against the taxing authority, and all doubts resolved in favor of the taxpayer." *Dennis* v. *Commissioner of Corps. & Taxn.*, 340 Mass. 629, 631 (1960). See also *Boston Safe Deposit & Trust Co.* v. *State Tax Commn.*, 346 Mass. 100, 105 (1963). That principle has particular applicability, we think, to a penalty assessment. In our view, an assessment within the "best information and belief" of the Commissioner must reflect any taxes which have been withheld by the Commonwealth. An employer is under a statutory obligation to deduct and withhold taxes from employee wages and to pay those taxes over to the Commonwealth. G. L. c. 62B, §§ 2, 5, and 6. Moreover, G. L. c. 62C, § 79(*b*), inserted by St. 1980, c. 27, § 7, provides that "[a]ny tax deducted and withheld at the source . . . shall, in respect of the recipient of the income, be deemed to have been paid by him on the fifteenth day of the fourth month following the close of his taxable year. . . ." See also G. L. c. 62B, § 12. It is not an undue burden on the Commissioner to require him to check his own records of taxes paid before assessing a penalty based on the taxes due from a taxpayer for a particular year.

The Commissioner's reading of the statute, accepted by the board, would yield anomalous and grossly unfair results. According to the Commissioner's interpretation, the penalty under G. L. c. 62C, § 28, for late filing would vary in proportion to the total tax payable on a year's income, and not on the amount actually owed and unpaid. Such a penalty would bear no relationship to either the degree of the taxpayer's fault or the harm done to the Commonwealth. Take, for example, a taxpayer who fails to file a timely tax return whose tax for a particular year is $10,000 and who has had $9,999 withheld by the Commonwealth. According to the Commissioner's interpretation of the statute, the taxpayer should be assessed $10,001,[6] plus additional late penalty and interest charges,

---

[6] The $10,000 figure would be doubled by the Commissioner to reach $20,000 and then the $9,999 would be deducted.

although if he had filed a timely return, he would have owed the Commonwealth only one dollar. On the other hand, take a taxpayer who failed to file a timely return who earned less income but had no income tax withheld and therefore owed a substantial amount of taxes. Although he failed to satisfy a much larger tax obligation, he would be subject to a significantly smaller penalty. We do not believe the Legislature could have intended such lopsided and seemingly arbitrary results.

The Commissioner argues that such disproportionate remedies were authorized by G. L. c. 62C, § 38, as amended by St. 1978, c. 514, § 128,[7] which provided, in pertinent part, prior to a 1985 amendment, that in cases where the taxpayer "failed without good cause to file his return within the time prescribed by law, . . . the commissioner shall not abate the tax *below* double the amount for which the person assessed was properly taxable. . . ." (emphasis supplied). To avoid the same arbitrariness and unfairness inherent in the Commissioner's interpretation of § 28, we do not interpret "properly taxable" in § 38 to refer necessarily to the gross tax on the taxpayers' income. Section 38, we believe, was intended to prevent the Commissioner from eliminating through an abatement any penalty which previously had been properly imposed under G. L. c. 62C, § 28. This purpose is preserved by the interpretation we place on the phrase "properly taxable."

The Commissioner also argues that such disproportionate penalties are required in order to insure that taxpayers who may not owe significant taxes have an incentive to prepare and file their returns. This argument is not persuasive. Those who fail to file tax returns are subject to penalties for their defaults even according to the interpretation of the statute we

---

[7] General Laws c. 62C, § 38, was amended by St. 1985, c. 593, § 20. In the amended statute, the words "he failed without good cause to file his return within the time prescribed by law . . ." were deleted. The amendment does not affect this case. Both the relevant tax year and the year in which the tax was assessed under section 38 preceded the amendment.

Although section 38 no longer applies to abatements granted to taxpayers who failed to file tax returns, it still applies to abatements granted to a taxpayer who "filed a fraudulent return, or having filed an incorrect or insufficient return, has failed, after notice, to file a proper return."

adopt. Those penalties, however, are generally proportionate to the seriousness of the harm done to the Commonwealth. Moreover, such delinquent taxpayers may be charged interest under G. L. c. 62C, § 32, and other penalties under G. L. c. 62C, § 33, and they may be subject to criminal prosecution.[8] We also take note of the Commissioner's argument that the Legislature could not have intended that credit be given for withheld taxes in computing the amount due under G. L. c. 62C, § 28, because, in contrast with that section, G. L. c. 62C, § 33(d), for purposes of determining a different penalty for late filing, expressly provides for such credit. In light of the potential for unfairness and arbitrariness in the Commissioner's interpretation, and the fact that the statutory scheme on the whole is not a model of clarity and organization, we do not necessarily assume that the language which appears in § 33(d) was intentionally omitted from § 28.

The record in this case is insufficient to justify a ruling that the Commissioner should also have considered the effect, which would have been relatively minor, of the taxpayers' FICA payments on the penalty.[9] The information relevant to

---

[8] For example, G. L. c. 62C, § 73(c), as appearing in St. 1983, c. 233, § 41, provides: "Any person required under this chapter . . . to . . . make a return . . . or . . . who willfully fails to . . . make such return . . . at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and shall be fined not more than twenty-five thousand dollars . . . or b[e] imprison[ed] for not more than one year, or both, and shall be required to pay the costs of prosecution. . . ."

[9] Contributions to FICA, or other governmental retirement funds, within certain limits, are deductible from income for State tax purposes. G. L. c. 62, § 3(B)(a)(3) & (4). See 26 U.S.C. §§ 3101, 3102 (1982). Based upon the information supplied by the taxpayers with their application for an abatement, the Commissioner determined that the taxpayers' total tax burden for 1980 should be reduced by $79, the amount by which the total tax would have been reduced as a result of the FICA deduction. Since the penalty originally assessed by the Commissioner was double the amount he determined to be the total tax due, plus other interest and penalties, the issue before us now is whether the Commissioner should have subtracted the $79, before, as the taxpayers contend, or after he determined the penalty. As with the issue of State income taxes withheld, the question is whether the Commissioner's initial determination of the penalty was made "according to his best information and belief." G. L. c. 62C, § 28.

the FICA deduction would not necessarily appear on the taxpayers' Federal income tax return, which, in his brief, the Commissioner admits he had.[10] The information does appear on the W-2 forms, but we cannot assume that those forms were also in the possession of the Commissioner when the penalty was first assessed. It is true that such deductions are fairly routine and that the Commissioner, under 26 U.S.C. § 6103(d), could have requested the information from the Internal Revenue Service. We are also aware that W-2 forms are required to be affixed to returns filed by taxpayers, but we do not know if they appear on copies furnished to State tax collection agencies. Nevertheless, on what is before us, we do not rule that the department should have sought the FICA information before determining the penalty.

The decision of the board is reversed, and the proceeding is remanded to the board so that the penalty may be recalculated consistent with this opinion (with such concessions to fairness as the Commissioner in equity and good conscience should recognize in the light of his present knowledge) and an abatement ordered in the appropriate amount.

*So ordered.*

---

[10] We do not rule on the extent, if any, to which the Commissioner must consider information on the Federal tax return.